## LORILLARD and others *vs.* COSTER and others.

Where the testator devised his estate to his brother and his twelve nephews
and nieces, and to the survivor or survivors of them, in trust to receive the
rents and profits of the estate and apply them to the use of the twelve
nephews and nieces, in equal shares, during their joint lives, and to the
survivor or survivors of them so long as any of them should live, and to
convey the remainder of the estate in fee to such of the descendants of the
twelve as should then be in existence ; *Held,* that the ultimate remainder
in fee to the descendants of the twelve nephews and nieces was void, un-
der the provisions of the revised statutes, as being too remote ; that the in-
terests of the twelve cestuis que trust under the will was not in the nature
of a joint tenancy, but of a tenancy in common with cross-remainders ;
that the first cross-remainders, limited upon the life interest in the share of
the cestui que trust who should first die, were valid ; but that all subse-
quent remainders in that share, and all the cross-remainders limited upon
the life interests of the eleven survivors, in their original shares respective-
ly, were void.

Where the testator devises his real and personal property to trustees, and
directs certain portions of the real estate to be sold, and that the proceeds
thereof, together with his personal property, shall be invested in the pur-
chase of real estate upon certain trusts, which the heirs and next of kin
insist are illegal and void, such heirs and next of kin are entitled to an im-
mediate decision and decree of the court, upon the question as to the va-
lidity of the trusts which are supposed to be illegal, although the cestuis
que trust for whose benefit such purchase is directed to be made are not
yet in existence or ascertained.

If a present vested interest in property is devised to a class of persons, none
but those who are in esse, so as to answer the description in the will at the
death of the testator, are included in such class as devisees. And though
one year is allowed by law to the executor to collect, and to ascertain the
extent of a personal fund, which the testator has directed to be turned into
real estate for the benefit of the devisees, this does not alter the general
rule as to the construction of wills devising a present interest in property
to a class of persons.

Upon the principles of equitable conversion, money directed by a testator to
be employed in the purchase of land, or land directed to be sold and turn-
ed into money, is, in a court of equity, for all the purposes of the will, con-
sidered as that species of property into which it is directed to be converted ;
so far as the purposes for which such conversion was directed to be made
are legal, and can be carried into effect.  And the same principle is applica-
ble to a direction in a will to sell one piece of land and convert it into an-
other, by purchase, for the purposes of the will, under a valid power in
trust.

The doctrine of equitable conversion of property, depends upon the well es-
tablished and familiar principle, that a court of equity looks upon that as

done, which the parties to an agreement, or marriage settlement, have contracted to do, or which the testator by his will has directed to be done; so far as the contract of the parties or the will of the decedent could have been carried into effect without violating any equitable principle, or rule of law.

A devise of the rents and profits of land, which are to accrue and be received after the death of the testator, is subject to the rules of the revised statutes in relation to future estates in land; and every disposition of such rents and profits, either through the medium of trustees or otherwise, which, if valid, would have the effect of suspending the power of conveying an absolute fee in possession in the land for a longer period than is allowed by law, is a suspension of the power of alienation by means of a future estate, which renders such a disposition invalid, so far as it would have that effect.

Where, by the rules of the common law, or by the provisions of a statute, an estate or interest of a particular character would, if valid, have the effect, either directly or indirectly, of suspending the absolute power of alienation of land beyond the limits prescribed by law, such estate or interest cannot legally be created.

If the intention of the devisor in a will, or of the grantor in a deed, is illegal or incapable of being carried into effect, the court of chancery is not authorized to frame and decree the execution of a new intention for the devisor or grantor, as near as practicable to his original intent, by extending the doctrine of *cy pres* to such a case. But where separate and distinct interests or estates are created by will, or deed, some of which are legal and others illegal, the court must carry into effect so much of the intention of the testator or grantor as is consistent with the rules of law; where it is practicable to separate the legal from the illegal interests or estates thus created.

Every estate vested in executors or trustees, as such, is held by them in joint tenancy as between themselves. But the nature of their estate in the trust property, in reference to the rights of the cestuis que trust and others, depends entirely upon the nature of the rights or interests of the latter; so that when all the purposes of the trust, as to any share of the trust property, are illegal, or cease, the estate of the trust ceases pro tanto.

THIS was an appeal from a decree of the vice chancellor April 7. of the first circuit. George Lorillard, of the city of New-York, died in September, 1832, a bachellor, possessed of a large real and personal property, worth about three millions of dollars; most of which was in real estate in the city of New-York, and the annual income of his property at the time of his death was from eighty to one hundred thousand dollars. His mother was living at the time of his death, but she survived him only a few days. He left two brothers of the whole blood, Jacob and Peter Lorillard; one brother and one

sister of the half blood, Daniel Holsman, and Catharine, the wife of John G. Coster ; a niece, Maria R. Bartow, daughter of his deceased brother Blaze Lorillard ; and two grand nephews, George and Blaze Lorillard, children of a deceased son of his brother Blaze Lorillard ; who, upon the death of his mother, were the only heirs at law. By the will of G. Lorillard, the decedent, made in October, 1831, and executed in due form of law to pass real estate, he appointed his brother Jacob Lorillard, and his twelve nephews and nieces of the whole blood, children of his brothers, Jacob, Peter and Blaze, trustees and executors of such will. He also devised and bequeathed to such executors and trustees as joint tenants, and not as tenants in common, all his real and personal estate, in trust to and for the uses and purposes in the will declared, and which were as follows :

*First,* As to his real estate in the city of New-York : To lease the same from time to time, and to receive the rents and profits thereof ; and out of such rents and profits, to pay a legacy of $20,000 to the Theological Seminary of the Episcopal Church, and a legacy of $1000 to the trustees or vestry of St. Philip's Church ; and an annuity of $2000 to his half brother D. Holsman, for life, or until the death of all the children of his brothers, Blaze, Peter and Jacob ; an annuity of $500 to each of his grand nephews and nieces, who should be living at the time of his death, the grand-children of his said three brothers of the whole blood, and to each of his three nieces of the half blood, children of his half brother, D. Holsman ; such annuities to commence when the legatees respectively arrived at the age of twenty-one, and to continue for life, or until the death of all the children of his brothers, Blaze, Peter and Jacob Lorillard ; and an annuity of $200 to his aunt, Rosanna Bowers, during her life, or until the death of all the children of his said brothers. And to account for, pay over and divide the residue of such rents and profits, after deducting expenses and disbursements, to and among the twelve nephews and nieces who were named as executors and trustees in the will, and who were the only children of his said three brothers of the whole blood, during their natural lives, and to the survivors and survivor of them,

1835.

Lorillard
v.
Coster.

to be *divided equally between them, or such of them as should from time to time be living, share and share alike;* the annuities or distributive shares of the several nieces and grand nieces of the testator, to be paid to them for their separate use and benefit, free from any control, liabilities or engagements of their husbands.

*Secondly,* To sell and convert all the residue of the testator's real and personal estate into money, within three years after his death, and to invest the same in the purchase of real estate in the city of New-York; and the rents, income and profits of the real estate so purchased, after deducting expenses and disbursements, to be paid and divided by the executors and trustees, to and among all the children of the testator's brothers, Blaze, Peter and Jacob Lorillard, and the survivors and survivor of such children, during their natural lives; to be equally divided among such of them as should from time to time be living, share and share alike, and free from the control of the husbands of such of them as should be femes covert. The testator also declared it to be his will and desire, that his said nephews and nieces should not alienate, assign, sell or transfer their respective interests, shares or proportions of the rents, proceeds and income of any of his real estate, by his will directed to be paid to them, or any part thereof, without the written consent of a majority of his executors and trustees; such majority in no case to be less than three persons.

*Thirdly,* The testator directed that, after the death of all his said nephews and nieces, the children of his brothers, Blaze, Peter and Jacob, all his estate, then remaining, should be equally divided among all the children of such nephews and nieces, and the surviving children of such of them as might then be dead, in equal proportions *per stirpes,* and not *per capita :* special directions being given by the will as to the distribution of the estate among them; which distribution was not to be made until the expiration of two years after the death of all the said nephews and nieces.

*Fourthly,* The testator authorized such of his executors and trustees, not less than three in number, as were willing to serve, and who should not be under age, or non-residents

1835.

Lorillard
v.
Coster.

of the state, to execute the trust. He further directed that when his executors and trustees should, by death, removal from the state, or other disability, be reduced to less than five persons, the number should be increased from time to time to seven persons: the eldest grand-children of his brothers, Blaze, Peter and Jacob, who should be qualified and willing to act, to be selected for that purpose to fill the vacancies that might occur from time to time; the requisite conveyances to be executed by the surviving trustees and executors, to vest in such new trustees and themselves the trust estate for the purposes of the will. And such new trustees, respectively, were to receive one-sixteenth of the net income or rents and profits of the estate, during the time they should act as such trustees and executors; in lieu of the annuities to which they would be entitled, during that time, under the previous provisions of the will.

By a codicil, made in December, 1831, the testator disposed of several different parcels of his property, to some of his relations, for life or otherwise; which devises and bequests were not in controversy in this suit. By the codicil, he also directed his executors and trustees, for the first seven years after his death, to pay to his niece, Maria R. Bartow, only one half of her share of the rents and profits to which she would be entitled under the will, and to keep and retain the other half of her share for the use and benefit of her children, to be invested by the executors and paid over to such children at such time and in such manner as the executors and trustees, or a majority of them, should deem expedient. He also directed his executors and trustees, during the first seven years after his decease, to retain the share of the income, or rents and profits of his estate, which under the will would be payable to his nephew, Jacob Lorillard, junior, and to invest the same for the benefit of him and his children; to be paid to him, or applied to the benefit of his children, in the discretion of a majority of the executors and trustees, in such manner and at such times as they should deem most advisable. And in case he should have no children, or they should die before the money was applied to their use, the executors and trustees were authorized to pay the same to him, or to divide the

same among his surviving sisters, as they should deem expedient. By the codicil, he also gave annuities of $500 to each of the other children of his half brother, D. Holsman, who should be living at the time of the testator's death; to commence when such children arrived at the age of twenty-one, and to continue during life, or until the death of all the children of his brothers, Blaze, Peter and Jacob Lorillard, and payable out of the same fund as the other annuities. Subject to these exceptions, the original will was confirmed; with a special provision that any devise or bequest contained in the codicil, which should become lapsed, by the death of the devisee or legatee, should be disposed of by the executors and trustees, according to the terms of such original will.

Shortly after the death of the testator, the will and codicil were duly proved before the surrogate of New-York, and letters testamentary were issued, to seven of the nephews and nieces named in the will as executors and trustees. Maria R. Bartow, another of the nieces, afterwards took out letters testamentary thereon; and the other four nephews and nieces, named in the will as executors and trustees, were minors. Catharine Holsman, the mother of the decedent, made a will of her personal estate, previous to her death, and appointed her sons, George, and Jacob Lorillard, and her son-in-law, J. G. Coster, executors. And after her death, the will was proved by Jacob Lorillard and J. G. Coster, the surviving executors, who took upon themselves the execution thereof.

The bill in this cause was filed by Jacob Lorillard, one of the executors of his mother, and also one of the executors and trustees named in the will of his brother, and by the seven nephews and nieces who first took out letters testamentary and assumed the execution of the will of G. Lorillard, together with the husbands of such of those nieces as were married, for the purpose of settling the construction of the will and codicil of G. Lorillard, and of having the trusts thereof, so far as they were valid, carried into effect under the direction of the court of chancery. And Maria R. Bartow and her husband, who had refused to join in the suit, the four executors and trustees who were minors, J. G. Coster and his

1835.
Lorillard
v.
Coster.

wife, Peter Lorillard, the brother, and D. Holsman, the half brother of the testator, together with George and Blaze Lorillard, his grand nephews, were made defendants. The answers of the defendants, except of the four infant executors and trustees, admitted the material facts stated in the bill, but insisted that the devises and bequests were illegal, except some of the specific devises and bequests contained in the codicil; and they claimed to have the residue of the estate distributed as in cases of intestacy. The four infant trustees submitted their rights and interests to the decision and protection of the court. The cause was heard before the vice chancellor of the first circuit, who decreed in favor of the validity of all the trusts contained in the first and second sections of the will, and directed them to be carried into execution, according to the terms of the will. He expressly declined to make any decree, either in favor of or against the validity of the ultimate limitation over of the estate, to the issue of the twelve nephews and nieces, after their deaths, as provided for in the third section of the original will; the proper parties not being before the court. But in the opinion delivered at the time of making the decree, he arrived at the conclusion that the ultimate limitation over was void. Nothing was said in the decree as to the validity or invalidity of the provision, in the fourth section of the will, giving one-sixteenth of the income to the grand nephews and nieces who might be selected to act as new executors and trustees, in the manner there provided for; or as to the validity of the accumulation of one half of Mrs. Bartow's share of the rents and profits, or the whole of Jacob Lorillard junior's share, for seven years, as provided for in the codicil. But by the decree, the acting trustees were to be at liberty to apply to the court, from time to time, for further directions respecting the execution of their trust, upon the foot of that decree. From this decree, all the defendants, except Peter Lorillard, the brother, and the four minor executors and trustees of the testator, appealed to the chancellor.

1835.
Lorillard
v.
Coster.

The following is the opinion of the vice chancellor, upon the decision of the cause by him :

M'Coun, V. C.  The income of this estate is very large, amounting to between eighty and ninety thousand dollars a year.  The defendants set up claims as heirs at law and next of kin of the testator, in opposition to the will, alleging that the devise to the trustees and the trusts therein declared are contrary to law, and void in whole or in part ; and some of them have given to the trustees written notice, forbidding any appropriation or distribution of the income or property of the estate under the trusts of the will.  The trustees, being unwilling to incur any responsibility involving so large an amount, have filed their bill for the advice and direction of this court.  Mrs. Bartow, one of the trustees, refused to unite with the others in filing the bill, and she and her husband are consequently made defendants.  The bill seeks a discovery of the defendants' claims to the trust estate, and the grounds of their objection to the validity of the will, and prays that the will and codicil may be established, that the trusts may be carried into execution under the direction of the court, and that the title of the complainants, as trustees, may be quieted.'

The answers of the defendants do not point out particularly the grounds of their objection, but insist, generally, that the will and codicil (excepting some of the devises in the latter) contain provisions contrary to law, and are consequently void ; that the bulk of the estate and its income should therefore be divided, as in case of an intestacy, and not under the trusts expressed in the will.  The parties do not differ about the facts of the case.

The cause has been heard upon the bill and answers, and the questions that arise are questions of law, and these it is of the utmost importance should be decided correctly.  The title of an immense estate depends upon the result, and the inquiry involves an examination of common law rules, as applicable to some parts of the will, and also, what is more interesting, an exposition of a portion of the Revised Statutes relating to real property ; in order to determine how far, if at all, the trusts of the will are at variance with, or an infringement of

their enactments. The final decision of this case will proba-
bly establish landmarks as to the extent to which express
trusts may be carried under our present system of statute law,
and I am aware that mine is but the duty of a pioneer on this
occasion; and if I should not be able to mark out a correct
path in this unexplored region, (I mean unexplored by any
judicial interpretation,) those who may be called to consider
the questions after me, will not be bound to follow it. There
is one point upon which I do not understand any difference to
exist between the very able and distinguished counsel who
have argued this cause. It appears to be admitted that, un-
der the devise to the thirteen persons named as trustees and
executors, the legal title and estate at common law would
vest in them in joint tenancy, whilst a distinct equitable es-
tate or interest would remain in those entitled to the benefi-
cial ownership; and that, by the Revised Statutes, the trus-
tees take a similar estate, provided the trusts are such as the
law at this day will tolerate. This is the case, not only as
respects the property of which the testator died seized, but
likewise as to the real estate *to be purchased* within the city
of New-York, by way of investment of the proceeds of the
property lying out of the city, which they are directed to sell
and convert into money for that purpose. As respects the
lands lying out of the city, and for the purpose of making the
sales, the trustees have, under the statute, only a *power in
trust*, the title in the mean time descending to the heirs at
law, subject to the execution of the power. Whenever the
power is executed, (and it is *imperative* upon the trustees to ex-
ecute it within three years,) the title and estate of the heirs will
be divested; and as the money is to be laid out in the purchase
of other lands, as directed by the will, the trustees will take
precisely the same estate therein, as they have by the will in
the lands which were owned by the testator in the city of
New-York, at the time of his death; and for this reason, that
the trusts declared in relation to both are of the same nature,
and require the same active duties to be performed by the
trustees. On this subject, the provisions of the statute con-
cerning uses and trusts are very explicit. All trusts which
would be merely nominal or passive in the trustee, are abol-

1835.

Lorillard
v.
Coster.

ished—as where the cestui que trust would be entitled to the actual possession of the lands, and the receipt of the rents and profits, or where the duty of the trustee is not connected with some power of actual disposition or management of the lands. (1 R. S. 727, § 47, 48, 49.) But where the object of creating an express trust is not merely nominal, but such as will require active duties to be performed by the trustee, the statute then permits a trust to be created for certain specified purposes; and, in these cases, the trustees have either a power in trust or an estate in the lands, according to the nature of the trust. If it be to sell, mortgage, or lease, without authority to receive the rents and profits, the trust will be valid only as a power. On the other hand, if the trust is express, for the trustees to receive the rents and profits for the use of any person during life, or for accumulation within certain prescribed limits, the whole estate is then vested in the trustee, in law and equity, subject only to the execution of the trust; the persons for whose benefit the trust is created taking no estate or interest in the lands, but having the right only to enforce performance of the trust in equity. (1 R. S. 729, § 56 to 61.) The object of declaring the whole estate to vest in the trustee in such cases, and that the cestui que trust shall take no estate or interest in the lands, I may have occasion hereafter to notice.

Before proceeding further with the inquiry, how far the trusts of the will in question answer the description of either of those permitted by the statute, or are forbidden by any of its provisions, it is necessary to look at them with reference to the common law rules, and to ascertain their validity upon the principles which those rules furnish. The first article of the will declares the trusts of the rents and profits of the city property—the same to be applied to the payment of two pecuniary legacies, and several other legacies of specific sums, by way of annuities to various persons, during their lives respectively, or until the death of all the children of the testator's brothers, Blaze, Peter and Jacob, and to divide the residue among the twelve nephews and nieces, designated by name as persons in being, the children of the same three brothers of the testator; the division to be made among them

during their natural lives, and among the survivors of them, and ultimately the longest liver of the twelve, to take the whole during his or her life.   At his or her death, the whole estate is to go over to persons in remainder, and is then to be distributed.   Now, supposing the limitation over of the trust estate to be entirely contingent as a remainder, by reason of the uncertainty of the persons who are to take, or to be valid only by way of executory devise, or as a shifting or springing use—for it is immaterial, for the present purpose, by or under what species of limitation the future estate or interest is to vest—the trusts for life, whether regarded as legal or equitable estates, and the limitation over, would nevertheless be valid at common law.

The law which prohibits the tying up of property in perpetuity, nevertheless admits of the fettering of estates, so far as to render them unalienable during a life or any number of lives in being at the time of creating the estate, (which in the case of a will is the death of the testator,) and the period *of minority and gestation* afterwards.   This has become a familiar rule of law.   The celebrated case of *Thellusson* v. *Woodford* is a remarkable instance of an adherence to the rule, even in the case of trusts created for accumulation during the lives of a great number of persons living at the decease of the testator, and of such as should be born in due time afterwards.   And although, in consequence of so extravagant a will, and the manifest impolicy of permitting trusts of accumulation to that extent, the British parliament, at the instance of Lord Loughborough, who had decided the cause in chancery, interfered and passed an act confining the period of accumulation within reasonable bounds, yet they made no alteration in the period allowed for suspending the vesting of estates, provided such estates might take effect after a life or lives in being, and twenty-one years and nine months.   In the late case of *Bengough* v. *Edridge*, (1 *Sim. Rep.* 173,) limitations of the inheritance were suspended during the lives of twenty-eight persons, and the survivor of them, and a gross term of twenty years.   And the trusts to be performed after the expiration of this term, from the decease of the survivor of the twenty-eight persons, were held by Sir John

1835.
Lorillard
v.
Coster.

Leach, V. C., to be good in law; and his decree was affirmed in the house of lords, where it was established that a limitation by way of executory devise, which is not to take effect until after the determination of a life or lives in being, (for instance of twenty-eight persons,) and a term of twenty-one years as a term in gross, and without reference to the infancy of any person, is a valid limitation. (*See the case reported under the title of Cadell* v. *Palmer and others,* 1 *Clark & Fin. Par. Rep.* 372.)

These cases are sufficient to shew the extent to which the rule has been permitted to be carried; and it is very manifest that the trusts declared in the first article of the will in question are no infringement of it. These trusts suspend the vesting of the inheritance, or the power of alienation, no longer than during the lives of persons in being at the time of the testator's decease, and the life of the survivor. Even the annuities are given to persons particularly named, and when extended to children or grand-children not named, they are only to such as shall be living at the time of the testator's decease; and the annuities are to continue no longer than the lives of the respective annuitants, though they may terminate sooner by the death of all his nephews and nieces—that event being one upon which they will also cease. Then, as respects the trust declared in the second article of the will; this, it is contended, is very different from the former—that it is created not for the benefit of the same nephews and nieces of the testator, previously named as persons in being, but that the rents and profits of this portion of the estate, viz. the property to be purchased in the city of New-York by the trustees, are to be divided among all the children of his brothers, Blaze, Peter and Jacob, as a class, which includes after-begotten children of the two brothers living, as well as those already in esse—that this is tying up the estate for a period beyond that allowed by law, and renders the will in that respect void. There is undoubtedly some ambiguity in this part of the will. The words, to and among all the children of my said brothers, Blaze, Peter and Jacob, as here used, would seem to denote a class of persons, and include all who might answer the description, at any time, present or future, and not the same

twelve children of his brothers previously spoken of. A slip in writing the will, by omitting one or two words only, as the word *said* or *before named,* may have produced this effect without the testator intending it; since the use of either of those expressions would have rendered it perfectly clear that he referred to his twelve nephews and nieces, and to no others. But he may have purposely omitted the use of any such words, in order that his bounty should not be confined to them, provided other children of either of his brothers should afterwards be born; for the law presumes it to be within the range of possibility, that every man, during his life and within the period of gestation after his death, may have lawful issue born to him; and the testator may have acted upon this presumption. It therefore becomes a question of intention, to be gathered from the whole will, whether the trust created in relation to the rents and profits of this part of the estate, applies exclusively to the nephews and nieces named as individuals to take, or extends to after-born children of his brothers, if any such there should be.

In one part of the will, and also in the codicil, annuities are directed to be paid to unnamed children of particular persons; but, as before observed, they are expressly confined to those who shall be living at the time of the testator's decease. This circumstance would seem to show that the testator understood the rule of law, and was careful not to create any trusts in favor of persons too remote; though the omission of such precautionary words, in the clause I am now considering, has been used as an argument to show he did not so intend to limit it in this instance. Other clauses and expressions in the will, I think, will show more clearly his meaning. In reference to the duration of the annuities, they are to continue during the life of the respective annuitants, or until the death of *all the children* of my brothers, Blaze, Peter and Jacob. Such are the words used. This event (the death of all such children) is fixed upon, in the third article of the will, as the period when the trustees shall proceed to make the final division and distribution of all the estate; and he there speaks of it as the death of *all my said nephews and nieces,* the children of my said brothers, &c., having previously,

1835.

Lorillard
v.
Coster.

in the last clause of the first article, enumerated and designated them by name, as the children of his brothers: thus clearly identifying *all the children* of his brothers with the nephews and nieces he had named, showing them to be the same persons—*all* meaning the particular twelve nephews and nieces, and his *said nephews and nieces* meaning all the children. Indeed, I think it is sufficiently apparent that the testator has used the phrases *all the children of my brothers* and *my nephews and nieces* synonymously throughout the will.

Again; there is to be but one division or distribution of the whole estate, and but one preparatory notice for that purpose, which is to be published *upon the death of all my said nephews and nieces,* evidently referring to those previously named. And at the expiration of two years thereafter, that is, after the decease of all the said nephews and nieces, the distribution is to be made. Now, if after-born nephews and nieces were intended to have an interest in any part of the estate, they might become entitled, as survivors of the twelve, and therefore the testator would not have directed a division to be made of the entire estate, upon the death of the twelve. A postponement beyond that period is not provided for in any event, and nothing occurs to show that it was intended. To say that other nephews and nieces are included, is, in my opinion, creating a repugnancy between the clause under which they must take, and the directions for the final division. I must consequently reject the construction which would produce that effect, and adopt the one calculated to render all the parts of the will consistent with each other, and the whole, if possible, conformable to the rules of law. But supposing the construction contended for by the defendants' counsel to be correct, that the trust is for the benefit of all the children of his brothers as a class, and not the particular nephews and nieces previously named, and then I do not understand that it would let in children born after the death of the testator.

The gift is immediate, to take effect upon the death of the testator. The trustees have first, however, to execute a power in trust, which it is imperative upon them to execute within three years, though they may execute it in less time. That

which is agreed or directed to be done, is looked upon in equi-ty as done, for all the purposes of giving and securing to par-ties in interest their proper rights.

Upon this principle, the trusts may be considered as taking effect from the death of the testator, notwithstanding there may be a delay of three years before the fruit thereof comes to maturity. This case then falls within the principle, that where there is a general devise or gift to children or other per-sons *as a class,* which is to take effect at the death of the tes-tator, those who are in esse and answer the description at that time are the persons entitled, and the after-born are excluded. But where a previous life estate *is* given, with a remainder over to a class by a general description, all the persons an-swering the description at the time when the gift is to vest in possession, although born after the decease of the testator, are included. And so likewise in a gift to children, where the distribution or time of payment is postponed to a certain peri-od, or upon the happening of a certain event, such as the age of twenty-one, or marriage, all are let in to participate in the gift who come in esse before the time appointed, and answer the description at that time. The numerous cases in the books abundantly support these propositions. (*See Saunders'* *note to Heathe* v. *Heathe,* 2 *Atk.* 122 ; *Eden's note to Andrews* v. *Partington,* 3 *Bro. C. C.* 404 ; *Leake* v. *Robinson,* 2 *Mer.* 363 ; *and Crone* v. *Odell,* 1 *Ball & Beat.* 449 ; 3 *Dow's Par. Rep.* 61, *S. C.*) If, therefore, the benefits of the trusts under the second article of the will, should be deemed a gift or devise to all the children of his brothers, in general terms, without ref-erence to the number or names of the individuals, it would not include after-born children, but only those who were in being at the time the will took effect ; and consequently, upon this ground, it is likewise free from the objection raised against it at common law, as tending towards a perpetuity. The question upon this part of the will has not been presented for the purpose of settling any adverse claims between nephews and nieces in being, and any after-born, because there are no persons of the latter description to make such claims. , In point of fact, the twelve named in the will are all the chil-dren there are of the testator's brothers ; but it is neverthe-

less a question which the defendants as heirs at law have a right to make, in order to test the validity of the trust. According to my views of the law of the case, and upon the fair construction of the will, the trusts of the second article, as well as of the first, are valid at common law.

I now come to the more important part of the investigation; and that is to ascertain how far the provisions of the revised statutes affect the trusts in question.

The nature of the estate which the trustees take by virtue of the devise, provided the trusts are admissible under the statute, has been already explained. Section fifty-five, in the article of the statutes concerning uses and trusts, declares for what purpose express trusts may be created. One of these is " to receive the rents and profits of lands, and to apply them to the use of any person during the life of such person, or for any shorter term, subject to the rules prescribed in the first article of the same title of the statutes." Although *any person* and *during the life of such person* are here used in the singular number, and the will declares a trust for *the benefit of a plurality of persons*, still this forms no objection to its being considered within the statute; because the legislature have expressly provided, in respect to the grammatical construction of the statutes generally, that words importing the singular, shall be deemed to include the plural, and vice versa. (2 *R. S.* 778, § 11.) The great object of the statute, in allowing the creation of express trusts for the above purposes, undoubtedly was to enable persons to make provision by deed, or devise, for the infirm and helpless, or those laboring under some disability, or who might be unfit to be trusted with the management of property. Hence the propriety of vesting the trustee in such cases with the legal estate, and declaring that the cestui que trust shall take no estate or interest in the lands, but only a beneficial interest in the performance of the trust, which may be enforced in equity. Trusts of this character being moreover intended as the means of affording continual support, either during life, or for a shorter period, and often to the most improvident, it was deemed proper to guard them against being diverted from that object. This is done by declaring, in the first place, that the interest of the cestui que

trust, in accruing rents and profits, shall be unassignable by him, though his right and interest in a trust for the payment of a *gross sum* may be assigned. (*Sec.* 63.) And secondly, avoiding every sale, conveyance, or other act of the trustee, done in contravention of the trust, with notice. (*Sec.* 64, 65.)

The statute contains various other provisions necessary to regulate this important subject; but in none of them is it declared that a trust shall not be created for the benefit of more than a limited number of persons in being at the time, or be made to continue longer than during the lives of any particular number.

But it is said that the legislature have, nevertheless, in the preceding article of the statute, laid down a rule to which trusts are subjected, and by which their continuance is restricted to two lives in being. If this be so, I am bound to yield obedience to it.

By recurring to section 15, in the first article alluded to, we find it enacted, that "the absolute power of alienation shall not be suspended by any limitation or condition whatever, for any longer period than during the continuance of not more than two lives in being at the creation of the estate," except in the single case mentioned in section 16; which has no application to the present. And the first question is, to what does the 15th section apply? In order to ascertain this point correctly, recourse must be had to the context. The article of the statute in which it is found, relates to the creation and division of estates, and as far back as section seven it begins to treat of estates in *expectancy*, as contra-distinguished from estates in possession; both of which are defined. The former are divided into estates commencing at a future day, denominated *future estates*, and reversions. A future estate is then defined to be an estate limited, to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination by lapse of time, or otherwise, of a precedent estate, created at the same time; including of course in this definition, remainders, whether vested or contingent, and all other estates which would take effect by way of executory devise, or by a shifting or springing use at common law. The distinction between remainders and reversions is next pointed

out, and then the statute declares when these future estates shall be deemed *vested,* and when *contingent.*

Having thus shown what was meant by future estates, and pointed out their distinctive qualities, the next object of the legislature naturally enough would be to lay down the rule in regard to perpetuities, and to say how far property might be rendered unalienable by the creation or limitation of such future estates.

Here it may be remarked that property is perpetuated whenever it is rendered unalienable; and this will happen whenever the power to sell and convey the fee is entirely suspended, or is taken away by clogs or fetters upon the estate. The policy of every liberal government is against a *landed aristocracy ;* and the law, for good reasons, will not gratify the pride or vanity of men so far as to allow property to be perpetuated in families, and to be handed down from generation to generation, in a manner inconsistent with an absolute ownership, and divested of the quality of being transmissible by sale and purchase, which is inherent in every species of property. The first is effectually prevented, by abolishing entails, and the right of primogeniture in descents; and the latter has become a fixed principle of the common law. The courts, however, relaxed, and finally established the well known rule, allowing some latitude for the vesting of future estates. This rule came under consideration in the recent revision ; and the revisers, adhering to the general plan of revising the laws by frequently embodying some portion of the common law into the statutes with more or less alterations, thought proper to do so with respect to this rule. The result is contained in the two next sections in order, viz. the 14th and 15th; both of which it will be seen are necessary to make out the rule as now established, and for that purpose they must be read together.

The 14th provides that " every *future* estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this article." It then proceeds : "such power of alienation is suspended when there are no persons in being by whom an *absolute fee in possession* can be conveyed." These two sentences compose sec-

1835.

Lorillard
v.
Coster.

tion 14; and we have thus far two things ascertained: 1st, the *effect* which an absolute suspension of the power of alienation beyond a certain period will produce; and 2d, what will *constitute* such a suspension. But one thing farther was necessary, viz. to prescribe the period beyond which there should be no such suspension; and this is done by the 15th section already quoted. It is obvious therefore that the 15th section was intended to carry out the provisions of the 14th, and *that it* was necessary for that purpose. Without it the 14th would have been incomplete; but take the two together, and it is perceived at once that they form an explicit enactment, applicable, and only applicable to future estates. They do not affect estates in possession, or those where an immediate right to the possession of land is conferred. It is still competent by deed, or will, to create an estate to take effect immediately in possession, in favor of any number of persons in being, as joint tenants for their lives, and for the life of the survivor; because, however numerous they may be, they have only all to unite with the remainder-man, or reversioner, and convey the whole estate in fee. The power of alienation therefore exists; nor is it suspended for a moment by the creation of such an estate. It is only suspended when there are no persons in being by whom an absolute fee in possession can be conveyed—and this can only happen by the act of the party, not by operation of law.

If, in carving out an estate for a single life, or for the lives of a hundred concurrently, the inheritance is not at the same time disposed of, then it still belongs in reversion to the grantor, or devisor, and it is competent for the reversioner, or his heir when the inheritance descends, to unite with the tenants for life, in a sale and conveyance. By the statute (section 35) as well as at common law, expectant estates are descendible, devisable, and alienable, in the same manner as estates in possession. Disability, such as infancy, coverture, or lunacy, can make no difference, because this does not create a suspension of the power within the meaning of the law; it only disqualifies the person from exercising the power, whilst the disability continues, and in the mean time it may be exercised

1835.

Lorillard
v.
Coster.

for his benefit by others, under the authority of law, if found to be expedient or proper.

So, again, if at the time of creating such an estate for life or lives as I have mentioned, the remainder is disposed of, by a limitation over to persons in being, by which it becomes a vested remainder in fee, t' re is in such case no suspension of the power of alien ; for the reason already given, that there are tenants e and remainder-men in being, who have the whole estate, nd can convey it if they will. But if a grantor or devisor, who desires to dispose of the remainder after a precedent estate for life or years, or to create a future estate without the intervention of a precedent estate, shall choose to limit the future estate upon a contingency, either by way of remainder, executory devise, or by any limitation or condition whatever, to uncertain persons, or to take effect upon an uncertain event, so as to render it a *contingent* future estate, and not a *vested* future estate, he must then take care so to limit such contingent future estate that it will vest in some person or persons in being, or upon some event which must happen at a period not more remote than the expiration of the lives of two persons in being at the creation of the estate ; otherwise the future estate thus created and limited will be void. The reason is obvious ; the power of alienation is here suspended, owing to the contingency. While that lasts there is no person in being, or ascertained, in whom the fee vests, or by whom, or in whose right it can be conveyed ; and it must not therefore be made, so as to remain a matter of contingency and uncertainty for a longer period than during the continuance of two lives in being. The statute has altered the common law rule in this respect ; from a life or lives in being and the period of gestation and minority afterwards, it is now reduced to two lives certain. But the rule as now adopted only applies to contingent remainders, executory devises and future uses ; which are all comprised in the statute under the general name of contingent *future* estates. And such *future* estates and such only are rendered void in their creation, where there is an infraction of the rule—the prior estate is not and cannot be affected by it ; that remains good, although the future estate limited to take effect upon its determination

may be void.   The only consequence which I can perceive to flow from avoiding the limitation of the future estate, as being contrary to law, is, that the fee must be deemed to remain in the grantor or devisor, and, like every other reversionary estate, will descend to the heir, unless otherwise disposed of.   This appears to me to be the true exposition of sections fourteen and fifteen of the statute.   They relate to estates in expectancy, and operate only upon that class of them which are *contingent*, not upon those which are *vested*, as defined by section thirteen.   The distinction to be borne in mind is an important one.   A contingent future estate necessarily has the effect to produce a suspension of the power of alienation, and therefore must be so limited as to vest the estate within the prescribed period of two lives, except in the case mentioned in section sixteen ; whilst a *vested* future estate never can operate to suspend the power of alienating the property, and therefore is left unlimited as to the number of lives upon the determination of which it is to vest in possession, provided they are, all lives in being at the creation of the estate, as at common law.   This shows that the *prior* or *immediate* estate for any number of lives is good ; they must however be concurrent lives, though they may be successive in *point* of *interest*.   Section 17 admits of the creation of *successive* estates for life to persons in being at the time ; but upon the same principle as section fifteen, it provides against the interposition of more than two successive estates for life, to delay or prevent a remainder from taking effect.   The various other provisions concerning the creation of remainders and other future estates, and providing for the preservation of such as may be contingent, without the intervention of trustees as at common law, it is unnecessary particularly to notice.   Section thirty-six, however, in the article of the statute just considered, may be of some service in elucidating the further view which I shall now proceed to take of this case ; for it remains to be seen how far such rules as I have stated, apply and govern the trusts of the will in question.

These rules relate to future legal estates.   And *express trusts*, such as are created by this will, give only an *equitable estate* or *interest* to those entitled to the benefit of the trust.

1835.

Lorillard
v.
Coster.

But still in several respects there is a striking analogy; and as far as there is a parallel, the rules made to regulate the creation and extent of such legal estates, may with propriety be admitted to regulate and control the creation and operation of trusts. If it be against public policy or the law of the land, to permit, in deeds or wills, a direct limitation of remainders tending to a perpetuity, it is equally objectionable to allow trusts to be created to an extent which shall produce the same result. That which a man cannot do directly, he must not be permitted to do by indirect means. Hence the legislature have thought proper, and very wisely so, to qualify the allowance of express trusts, (at least such as are created for the purposes mentioned in the third and fourth subdivision of section fifty-five) by subjecting them to the rules prescribed in the first article concerning the creation and division of estates. Thus the trust to receive the rents and profits of land for *accumulation*, is restricted and governed by sections thirty-seven, thirty-eight and thirty-nine, in the first article. This species of trust, which would otherwise be unlimited, is thereby qualified, and kept within certain bounds. The reference is direct; and the subject of *accumulation* of rents and profits of lands is so distinctly treated of and provided for, in those three sections, that there is no difficulty in perceiving the application of the rules which they establish to the trusts of subdivision four, of section fifty-five. But the rules which apply and qualify the previous class of trusts mentioned in the third subdivision of section fifty-five, are not so palpable. They can only be ascertained by observing the analogy before spoken of; and where that does not exist, it will be in vain to look for the application of the same rules of law. The trusts of the will in question, as has been already shown, belong to this class. As respects the twelve nephews and nieces of the testator, the trust is for their immediate benefit. It is an equitable estate or interest, which commences in possession at its creation, that is, at the death of the testator; they are persons in being at the time, and the trust is to continue during the joint lives of all, and of the survivors of them, and the life of the last survivor. The rents and profits, after paying the

legacies and annuities, are given to the twelve entire, and not to each a twelfth part in severalty; *and it is admitted, that their interest is as joint tenants,* and not as tenants in common for life, with cross remainders. In the latter case, they would probably be considered successive estates for life, of the respective shares; and be restricted in their duration to the dropping of the two first lives, according to section seventeen. But it has not been attempted in argument to bring the case within that section. Viewing it, therefore, as a case of joint tenancy in the rents and profits, under the trust, the equitable interest or estate which the twelve nephews and nieces take in such rents and profits, though they have no estate or interest in the lands, is perfectly analogous to a legal estate in lands devised to so many joint tenants for life. The same rules, therefore, which would support or defeat such a devise of the legal estate, are the rules to be applied to the equitable, because it is to such rules that trusts are subjected. According to those rules, as deduced from the statute and the principles of the common law, there is no objection to an immediate life estate in favor of any number of joint tenants; for however numerous, they collectively possess the power of conveying the freehold, or whatever legal estate may be vested in them. It is the *future estate* only that is invalidated, when it is limited by way of contingent remainder, and when there are more than two joint tenants for life, or more than two lives in being to mark the duration of the precedent estate. Since, therefore, an immediate estate in possession may be created, to be enjoyed by more than two persons concurrently during their lives, and for the benefit of the survivors and survivor of them for life, upon the same principle and by the same rule, a trust may be created of the rents and profits of lands, to be enjoyed in like manner by any number of cestuis que trust. That the legislature intended this sort of comparison as the test for trusts, I think is very manifest. Section thirty-six above referred to, furnishes an example, and serves as a criterion for pursuing it still further. This section provides, that dispositions of the rents and profits of lands to accrue and be received at a time subsequent to the execution of the instrument creating such a disposition, shall be governed by the rules established in re-

1835.

Lorillard
v.
Coster.

lation to *future estates.* The disposition here meant, may be by grant or devise, and is such as may be made without the intervention of trustees. This section was doubtless introduced for the purpose of preventing any evasion of the provision of the 14th and 15th sections, by disposing of the rents and profits of land instead of the land itself; but, at the same time, it borrows from those sections a rule which it establishes in relation to the future dispositions of rents and profits, that applies with equal force to similar dispositions through the medium of trustees. Thus, if instead of a trust of the rents and profits of lands under the third subdivision of section fifty-five, for the *immediate* use of cestuis que trust, the trust should be made to commence in point of interest and benefit at a *future day,* the same rules would apply, which it is declared shall apply in the cases mentioned in section thirty-six, which are the rules governing the creation of future legal estates in land, and this I consider to be the end and design of the qualification annexed to the third subdivision of section fifty-five. Whenever, therefore, a *future estate* is void, as being too remote, a future use or benefit under an express trust, being in all respects similar, is likewise void. The trust created by the present will, so far as respects the twelve nephews and nieces of the testator, I repeat, is a trust which commences *immediately* for their benefit, as an *estate or interest in possession.* It is not a disposition of the rents and profits to take effect only at a future day, and therefore within the rules established in relation to future estates. The trusts for several of the annuitants are in that respect different; they are to commence in enjoyment at future periods, viz. when the respective annuitants attain the age of twenty-one years; but they are already vested in interest, and are in no respect contingent within the meaning of the law. But it is said that devising the legal estate to trustees for the use of so many persons during life, is of itself an infringement of the rule, and invalidates the whole trust, because the trustees are not at liberty to convey, and the cestuis que trust have no estate or interest in the lands which they can join in conveying, so long as any one of the twelve shall live; and consequently that the power of alienation is in suspense for a greater length of time than the

lives of two persons in being. But when it is considered how, and for what purpose the power of alienation on the part of the trustees and cestuis que trust is suspended, the objection to it entirely fails, and there is no other suspension of the power than what is sanctioned by the express authority and enactment of the legislature; and so far as they have prohibited the alienation or assignment of trust property, it has been done in order to prevent a breach of trust and a diversion of the property, and for no other purpose. (*See sect.* 63 *and* 65.) It would therefore be strange indeed, if that which was intended to preserve trusts inviolate, should be the means of overthrowing them. Except in contravention of the trust, I no where find a trustee, in whom the legal estate is vested, prohibited from conveying. There are cases in which the statute recognizes a title to be valid, which a person may acquire by a bona fide purchase from a trustee, and even creditors of the trustee may, in certain cases, enforce payment of their debts out of the trust property. (*Sec.* 64.)

Then, as respects the lives of more than two persons in being, for the duration of the trust. It must be borne in mind, that the rule of the common law contained no such restriction, and that in the article of the statute relating to uses and trusts, there is no limit of the number of persons in being who may or may not be provided for by any express trust, which under its authority may be created; and I have already endeavored to show that the reference to two lives in the previous 15th section, can have no such effect upon a present vested estate or interest in lands, or in the rents and profits of land. Independently of all this, and contemplating only the object of express trusts, and especially the trust to receive and apply the rents and profits of land from time to time as they accrue, and I am at a loss to perceive upon what principle, or for what reason, the statutes should be made to restrict the duration of trusts of that character, to the lives of not more than two persons in being at the time of their creation; when perhaps there may be a larger number equally the objects of care, or whose condition and necessities may alike require a continuance of the trust during their respective lives, and for whom, so long as any of them may live, a grantor or testator

1835.

Lorillard
v.
Coster.

may be bound to provide a support, both by the law of nature and the dictates of humanity. According to the views which I have taken of this will and the law of the case, I am of opinion, that the devise of the estate to the trustees, and the trusts of the will in favor of the legatees and annuitants, and of the twelve nephews and nieces, are all valid, both by the common law and under the revised statutes of this state.

Upon the hearing of this cause, the counsel of the complainants have asked for a decree no further than to declare the above trusts of the will to be valid trusts, and to direct them to be executed. They have purposely avoided discussing the question upon the limitation over, at the death of the twelve nephews and nieces, of the estate, which will then remain in the trustees, in favor of all the children of the nephews and nieces, and the children of such of them as may then be dead, for the purpose of making a division of the estate, as directed by the third article of the will. The defendants' counsel have nevertheless urged this point upon the consideration of the court, as one necessarily involved in the decision; because, as they contended, if this part of the will is contrary to law, the whole is vitiated. That consequence, in my judgment, does not follow. Even if this ultimate limitation over should be held void, I am decidedly of opinion that all the prior trusts are to be executed according to the will. *Beard* v. *Westcott*, (5 *Barn. & Ald.* 801, *and S. C. in Chancery, upon the certificate of the judges,* 1 *Turn. & Russ.* 25,) is an instance of the kind, and an authority upon this point. Nor do I well perceive that any further decree can be made in this suit, when the complainants do not ask it. If the defendants had wished a decree setting aside or declaring void the limitation over of the remainder, they should have filed a cross bill, as was done in *Thellusson* v. *Woodford;* though it has been objected that there are not parties in esse to enable the court at this time to make an effectual decree upon that subject. Whether it be so or not, I shall not now determine; nor shall I extend the decree in this suit to that part of the will. But I cannot refrain from expressing my entire conviction, and I think it necessarily results from the views which I have taken of the law, that the ultimate limitation to the children and

1835.

Lorillard
v.
Coster.

grand children of the nephews and nieces, is void by the stat-ute, as a *future estate*; for, upon the death of all the nephews and nieces, the legal estate in the trustees will cease. Al-though it is intended they shall take under a power in trust, yet the further disposition can be viewed in no other light than as a limitation of a contingent remainder. It is *contingent*, be-cause the persons to whom it is limited are uncertain; as there may be many to become entitled according to the will, who are yet unborn. It appears, therefore, to be a case in which the power of alienation of the fee is suspended, and being lim-ited to take effect in possession after the death of twelve per-sons, the suspense is for a longer period than is allowed by statute. The future estate thus created, is therefore void, and the testator must, as I apprehend, be deemed to have di-ed seised of the *reversion* of his whole estate, which has de-scended to his heirs at law, subject, however, to the estate in the trustees during the lives of the twelve, for all the purposes of the immediate trusts. These observations upon the ulti-mate limitation of the will may be deemed gratuitous, but as the case is calculated to go further, I am willing it should go with the full expression of my opinion.

*Geo. Wood & D. B. Ogden*, for the appellants. Constru-ing the will in question at common law, and independently of the revised statutes, it gives to the trustees therein named a legal estate, in fee simple, in the real estate, and also in the personal estate when converted into land; and they take the same estate under the said statutes. As to the real estate in the city of New-York, the twelve nephews and nieces specially designated in the will, would, at common law, take an equi-table right to the use of the rents and profits thereof for their joint lives and the life of the survivor, subject to the personal legacies and annuities charged thereupon in the will.

In all the real estate, after the death of eight nephews and nieces, the grand children will come in and take each one-sixteenth of the rents and profits. This is sure to take place, but is uncertain as to the time, and as to the persons who will thus take. These grand children will take respectively a shifting use, displacing pro tanto the interests of those then

holding for life, which is a future use under the revised statutes.

The legal estates, as well as the equitable uses under this will, are joint tenancies, and the title, as well legal as equitable, continues one and entire, until its termination in the last survivor. (*Wollen* v. *Andrews*, 2 *Bing. R.* 126.  *Clerk* v. *Clerk*, 2 *Vern.* 323.) And the concurrent uses for life, as well in the city property as in the residue, fetter the power of alienating an absolute fee in possession beyond the period allowed by the revised statutes, of each and every entire parcel of property, and are void, being prohibited by said statutes.  The revised statutes, (1 *R. S.* 723, § 15,) prohibit such limitations as are contained in this will, by prohibiting all limitations and conditions suspending the absolute power of alienation for a longer period than during the continuance of not more than two lives in being at the creation of the estate.  By the word limitation, in this section, is meant the formation of estates or interests ; and the word is not to be taken in its restricted sense, as meaning the terminating or ceasing of an estate upon the happening of a certain event.  (2 *Bl. Com.* 493.  *Pleydell* v. *Pleydell*, 1 *P. Wms.* 750.  *Randell on Perp.* 48.  16 *Vin.* 333, *tit. Perp.*, § 12.)

The prohibition in this section extends to and embraces all estates, rights and interests, whether precedent or future, in possession, reversion or remainder.  (*Bank of North America* v. *Fitzsimmons*, 3 *Binney*, 359.  *Randell on Perp.* 48, 111.  *Corbet's case*, 1 *Coke*, 84.  *Mainwaring* v. *Baxter*, 5 *Ves. jun.* 458.) This is evident from the words of the statute.  The language is not only broad, but is expressive of a certain intent in particular—that it should be so broad and comprehensive as to embrace limitations and conditions generally, whether *de præsenti* or *in futuro*.  But even if the words were vague or dubious, the secondary or auxiliary rules of construction confirm this view.  (*Thellusson* v. *Woodford*, 4 *Ves.* 227.)  The 14th section, immediately preceding, is a substantive enacting clause, embracing a particular prohibition of future estates, for a particluar purpose, viz. to declare them void in their creation.  The 15th section contains a distinct and equally substantive enactment, in terms studiously broad and compre-

hensive.; and to confine it to future estates would render it vain, and nugatory tautology. It should be more comprehensive to give it effect, *ut res magis valeat quam pereat.* This whole article of the statute treats of precedent as well as future estates and interests. And the third, fourth, and nineteenth sections restrict perpetuities in precedent estates.

The mischief to be guarded against is particularly expressed in the statute, and extends to a fee in possession. The common law mischief intended to be remedied, was, the too great extension of the power of perpetuating estates ; which was, any limitation tending to take the subject. of it out of commerce for a longer period than lives in being and twenty-one years, allowing also a few months for the period of gestation. To advance the remedy and repress the mischief, the.restriction upon the power of fettering alienation must extend to precedent as well as future estates. Where the precedent estate is inalienable for more than two lives, unfettering the future estate alone does not reach the mischief. The prohibitory enactments in question extend to equitable limitations as well as legal, under the Revised Statutes : first, upon the general principle that *equitas sequitur legem ;* and second, by the express enactment in the 55th section of the statute. (1 *R. S.* 728.)

The inability of a cestui que trust, entitled to the rents and profits of land, to alienate, is a quality engrafted by legislative enactment upon his equitable rights to the property, and not a personal disability. The extending of such disability through more than two lives is not requisite to answer any supposed motives of the legislature in establishing and allowing this kind of limitation, and is directly within the mischief as above mentioned. (*Randell on Perp.* 202, 210, 211, 216, 220, 225. *Lord Southhampton* v. *Hertford,* 2 *Ves. & Bea.* 54. *Fearne,* 208, *note.*) This limitation for the joint lives of the twelve cestuis que trust is void in toto. The parts cannot be distinguished so as to make the will work by fractions.

All the residue of the property, as well personal as real, is to be converted into real estate in the city of New-York, and is in equity to be considered as real estate, and forms a residuary disposition. In the last mentioned real estate, the testa-

tor gives an equitable interest to a class of persons, viz. to all the nephews and nieces, children of his three brothers, which would include such as should be born after as well as those born before the testator's death, an estate for their lives and the life of the survivor, in the rents and profits thereof. Under the revised statutes, the direction to the trustees to divide the premises among the children, the class last named, is inoperative as a trust, and can only be carried into effect as a power in trust. Under the power in trust, no interest whatever, in any of the said real estate, or the proceeds thereof, can pass to the class last named, until the execution of the power, viz. until two years after the death of the surviving nephew or niece; and then they would take legal estates—the estate in the mean time descending to the heirs at law of the testator. In the residuary property this disposition over is too remote, as tending to a perpetuity upon common law principles, and is consequently void.

The concurrent interests for life in the residuary property of the first mentioned class, viz. all the nephews and nieces, including the interest or one sixteenth part given to the grandchildren, being inalienable, tend to a perpetuity as established by the common law, and are void. The future estates in fee in all the real property, being limited to a class of persons, are too remote, tending to a perpetuity, as restricted by the revised statutes, and are void in their creation. The concurrent interests for life in the rents and profits, as well of the city property as of the residuum, fetter the power of alienating an absolute estate in fee in possession beyond the period allowed by the revised statutes, as to each and every parcel of the property; such interests therefore are void, being prohibited by said statutes.

The court in this case should settle the construction of the whole will, so far as respects the premises in dispute, and either establish it, or declare its nullity in whole or in part, so that the trustees and defendants and others may know the extent of their rights, duties and liabilities; and thus save the necessity of future expense and litigation.

The claim and prayer of the bill covers the whole ground, and no cross-bill is necessary to enable the court to make a

1835.

Lorillard
v.
Coster.

full and perfect decree. (*Andrew* v. *Partington*, 3 *Bro. Ch. Ca.* 404, *and note. Pleydell* v. *Pleydell*, 1 *P. Wms.* 748.) The thirteen trustees under the will take a joint estate in the premises devised, by the express words of the will. The twelve cestuis que trust take a joint right to the rents and profits devised to them, and not as tenants in common. Trustees, under the revised statutes, take the legal and also the equitable or beneficial estate. The cestuis que trust, under the third subdivision of the 55th section, take only a right to their portions of that equitable estate in the trustees. This is a real, and not a personal right, springing out of the equitable estate in the trustees, somewhat analogous to a common law incorporeal hereditament. This right is subject to the rules of property in the precedent article, so far forth as the same apply. Under the 44th section of that article, two or more persons are tenants in common of a legal estate in their own right, unless an express intent to create a joint tenancy is declared. But in trust estates, held in right of others, which include the equitable estates, the rule is reversed, and the rule governing this equitable estate should be applied to the equitable right of the cestuis que trust springing out of it, they being of the same character and belonging to the same forum.

The trustees take a determinable fee, to cease when the purposes of the trust are fulfilled. Upon the death or removal of a trustee, the estate in trust does not cease, but vests in the chancellor, to be placed in the hands of a new trustee for execution, who takes not a new, but the same trust estate, which ceases only on the entire fulfilment of the trust. (*Corbet's case*, 1 *Coke's Rep.* 86, *b.*) The estates in the trustees will not cease on the death of Jacob Lorillard, under the idea that the equitable right of the cestuis que trust will then merge in the estates of the trustees. Merger in equity rests in the sound discretion of the court, to be judged of under all the circumstances existing when the case arises; and a court will not, by anticipation, take it for granted that there will be a merger, and qualify it accordingly. Infants being concerned, it will be for their benefit that, on the death of Jacob Lorillard, new trustees should be appointed by the court to manage the trust. The equitable right of the cestuis que trust is

only to the residue of the rents and profits, after the annuities are paid thereout which are first charged upon the rents and profits. The trust therefore must continue.

The right of the cestuis que trust being joint, continues one and entire, and is inalienable for the twelve lives. This right, by the statute, is made inalienable, and owners of it are prevented from conveying it; not from any peculiar disability existing in themselves to alienate, but because the right is inalienable. Inalienability, therefore, is attached to this equitable property.

This condition or quality of inalienability being attached to this equitable property by law, it cannot be rendered alienable by the act of the testator, because it would be repugnant to the nature of the estate. It would also encourage the creation of this kind of equitable property, which it is the policy of the law to prevent, as it is thereby taken out of commerce. The legislature intended to discourage the multiplication of this species of property, because, by rendering estates alienable, it would relieve the law of real property of its abstruseness; and because thereby the security of creditors and purchasers would be promoted, the investigation of titles be facilitated, the means of alienation become mo e s'mple and less expensive, and numerous sources of vexatious litigation closed.

The right of the cestuis que trust being expressly subject to the rules of the previous article, must be construed so as to harmonize with them, and be so limited as not to extend their inability beyond two lives in being at their creation. If the twelve cestuis que trust are to be considered tenants in common, then there are the twelve original shares and numerous cross remainders claimed to be admissible and valid. The entire joint legal estate to the trustees cannot be frittered away upon the ceasing of the other shares; but as to them, in the hands of the heirs, there would be a trust by implication, which is inalienable; and the whole being still inalienable for more than two lives, the limitation is inadmissible. If a testator wishes to provide this kind of inalienable property for more than two cestuis que trust, the only legitimate and practical way of doing it is to create a separate legal estate for each and every of them, or for two conjointly at farthest. This

1835.

Lorillard
v.
Coster.

will creates but one estate, either at law or in equity. It is either wholly good or wholly void. Where a trust is entire, it cannot be divided, and one part declared good and the other bad. The testator intended that the estate should continue in the trustees until all the trusts were performed. The cestuis que trust cannot convey the estate, as they have no interest therein. (1 R. S. 729, § 60.) Neither can the trustees convey without a violation of their trust. The cestuis que trust are neither joint tenants or tenants in common, as the whole legal and equitable estate is in the trustees. The twelve cestuis que trust take a joint right to the rents and profits. Upon the death or removal of a trustee, the trust will vest in the court of chancery and continue.

*B. F. Butler & Peter A. Jay,* for the complainants. The devise to the thirteen persons named in the will, as executors and trustees, is a valid devise of the legal estate in the lands of the testator, situated in the city and county of New-York, subject to the execution of the trusts declared in the will, or of such of those trusts as may be found to be agreeable to law. Although the lands of the testator, out of the city and county of New-York, may have descended to his heirs at law, yet the legal estate therein is held by the heirs, subject to the execution of the power of sale vested in the trustees; and the performance of this trust power will be enforced by the decree of this court.

The monies to be derived from the sales of the lands of the testator, out of the city and county of New-York, and the lands within the city to be purchased therewith, will be held by the trustees in the same manner, and subject to the execution of the same trusts, as the lands situated in New-York at the time of the testator's death, except as to the payment of the specific legacies and annuities charged on the proceeds of the lands in the city. The general powers of the trustees, and their active duties in respect to these lands, are the same as those conferred and prescribed in respect to the others. The persons, to and among whom the rents and profits are to be divided, are the same, although their names are not, in this instance, specially enumerated. The persons, among whom

1835.

Lorillard
v.
Coster.

the estate of the testator is ultimately to be divided, are the same in respect to all parts of that estate, and there is to be but one preparatory notice, and but one division. In the absence of any expresssion, denoting an intent to introduce additional persons as cestuis que trust, in respect to these lands, and in the absence of all the provisions which such an intent would render proper, the court will not, from a slight change of phraseology, infer the same, especially if such a construction would invalidate any part of the will. The devise in the second clause is confined, by the established rules of law, to the nephews and nieces of the testator, who were in esse at the time of his death; and these are in fact the same nephews and nieces who are named in the first clause.

Whatever may be deemed to be the precise nature of the legal estate held by the trustees, the rights of all persons interested in the performance of the trusts declared in the will are equally to be protected and enforced in this court.

The question, whether the limitation over of the estate remaining, after the death of all the nephews and nieces named in the will, is valid or not, cannot be decided in this cause, at this time, because no direction is now required in respect to it, and for want of the proper parties to litigate the same. And even if this part of the will should ultimately be adjudged to be contrary to law, it would not impair the rights of the cestuis que trust, among whom the rents and profits are directed to be divided, nor affect the prior trusts of the will.

The trusts of the will, directed to be performed anterior to the death of the last of the twelve nephews and nieces named therein, are all and each of them valid, and their performance ought therefore to be decreed by this court. The specific legacies to the seminary and the church, and the annuities to the legatees named in the will, except so far as they may be waived by their election to claim as heirs at law, are all authorized by the statute respecting trusts. The trust which directs the payment of the net rents and profits to the twelve nephews and nieces, during their lives, and to the survivors and survivor of them, is valid at common law, and there is nothing in the revised statutes to defeat the same or any part thereof.

The devise in the will was not to a class; or if it was, it was confined to the persons in esse, and did not extend to after-born children. In devises to a class, none but persons in esse at the death of the testator, and posthumous children, are included. (*Shep. Touch.* 436. *Prec. in Chan.* 470. *Baldwin* v. *Karner, Cowp.* 309.) Money, directed to be invested in lands, is to be considered as land, from the death of the testator. The legal estate in the trustees cannot endure longer than the trust; and the trust will last until the death of the survivor of the twelve nephews and nieces, and will then terminate, although the uncle should survive them all. Even if the trustees took no estate, the trust attached to the lands, and devolved on the court of chancery. (*Moggridge* v. *Thackwell,* 3 *Bro. Ch. Ca.* 517.)

An estate in the nature of a joint tenancy may be created without express words. Cross remainders cannot be implied in a deed. (2 *Powell on Devises,* 623, *and note.* *Armstrong* v. *Eldridge,* 3 *Bro. Ch. Cas.* 215. *Tuckerman* v. *Jefferies,* 11 *Mod.* 108. *Cruise's Dig. tit. Devise, ch.* 15, § 4. *Hawes* v. *Hawes,* 1 *Wil. Rep.* 165. *Doe* v. *Abey,* 1 *Maule & Selw.* 428. *Doe* v. *Tomkinson, Idem,* 165. *Pery* v. *White, Cowp.* 777. *Watson* v. *Foxson,* 2 *East,* 36.) And cross remainders are only implied in a will to effectuate the intention of the testator. They are never implied between tenants for life. If implied in this case, the intention of the testator will be defeated. The court, therefore, will imply a joint tenancy, in order to defeat the cross remainders. Cross remainders cannot be implied, even if the estate in the twelve nephews and nieces is a tenancy in common. Cross remainders have never been implied as to personal estate. The cestuis que trust have no estate in the land, not even an interest; only a mere right to come into chancery to enforce the performance of the trust. There is no necessity for cross remainders in this case. A joint tenancy will answer all the purposes of the devise. (2 *Vern.* 323. 3 *Bac. Abr.* 679.)

A merger will not occur upon the death of Jacob Lorillard. (*James* v. *Morey,* 2 *Cowen,* 246. *Blisset* v. *Cranwell,* 2 *Levins,* 373.) Because, as long as the annuitants live, the court is bound to protect their rights, and the trust will be preserved.

There never can be a merger as long as there is any person who is interested in the trust. A man may hold the legal estate as tenant in common with himself. (*Coke Litt.* 189, *b.*)

There are no provisions in the revised statutes prohibiting the creation of a joint estate to twelve persons for life, and the survivor and survivors of them. The fifteenth section (1 *R. S.* 723,) does not apply to this trust. The suspense of the power of alienation, if any, is not such a one as was contemplated by the statute; as in this case the lands devised may be alienated with the consent of the trustees. The argument founded on the sixty-third section (1 *R. S.* 730,) is irrelevant; as the law respecting legal estates does not apply to an equitable interest.

The invalidity of one of several concurrent trusts does not vitiate the others. There can be no objection to a devise to twelve persons as tenants in common, with cross remainders; and if all the remainder-men unite with the tenant for life, the fee may be conveyed. (*Randell on Perpet.* 85, 86. *Fearne on Cont. Rem.* 216, 218.) If the fifteenth section does apply to present estates, it cannot render the whole devise void; only the excess. But the devise not being a future estate, the 14th section does not reach it and declare it void. The 63d section does not create a personal disability; but the disability is annexed to the interest of the person who acquires it under the 55th section. (1 *R. S.* 728.) It is by charging a legal estate with such a trust as this that the legal estate is rendered inalienable, until after the twelve lives have fallen.

The specific legacies and annuities are valid, under the second subdivision of section fifty-five. The trust to receive the rents and profits and apply them is authorized by the third subdivision of that section. By means of a trust, lands may be rendered inalienable, during any number of lives in being, where a trustee is authorized to receive the rents and profits and apply the same to the support or use of another. He may pay the money in gross to the cestui que trust, and allow him to expend it himself; and the testator may declare and direct to whom the entirety shall go, after the termination of the trust. (1 *R. S.* 729, § 61.) If he has a right to give it as an entirety, he can keep and preserve it as such,

until the time arrives for giving it over. The fifty-fifth sec-
tion of the statute, (1 *R. S.* 728,) does not limit the number
of persons for whom a trust may be created. The sixty-third
section was intended to guard and protect trusts. If the fif-
teenth section does not apply to estates in possession, there is
nothing in the revised statutes to render the will invalid.

Even if the ulterior limitation over is illegal, it cannot vitiate
the prior limitation, provided that would have been good,
standing alone. (*Blandford* v. *Thackerell*, 2 *Vez. jun.*, 241.
*Pigot's Case*, 11 *Coke*, 27. *Mainwaring* v. *Baxter*, 5 *Ves.* 458.
*Beard* v. *Westcott*, 5 *Barn. & Ald.* 801. *Hopkins* v. *Hopkins*,
*Cas. temp. Talbot*, 50. *Thellusson* v. *Woodford*, 4 *Ves.* 325,
329.) Where several trusts are declared void on account of
the defect of one, it is because the statute has declared the in-
strument or means to be void. (*Grover* v. *Wakeman*, 11 *Wen-
dell*, 187. *Doe* v. *Hobson*, 3 *Dowl. & Ryl.* 186. *Doe* v. *Pitch-
er*, 2 *Marshall*, *C. P.* 261. 6 *Taunt.* 359, *S. C. Hannan* v.
*Osborn*, 4 *Paige*, 336.)

*John C. Spencer*, for Peter Lorillard. The legal estate of
the trustees, if not other than such as is necessary to support
the trust, is valid if the trust is good. The restrictions upon
that estate which prevent its being aliened so as to vest an ab-
solute fee in possession are not the act of the party, but of the
law ; and if not legal, they do not exist; and if legal, they
must prevail. The trust to receive rents and profits, and ap-
ply them to the use of the twelve persons named is valid, ap-
plying to their interest the rules concerning legal estates.
There is no future equitable interest created which would pre-
vent the aliening the absolute interest during lives in being.
There are no limitations or conditions made by the testator
which suspend the power of aliening that interest beyond the
period prescribed by law, in relation to real estate. The re-
striction is the act of the law, and not of the party ; and if not
a legal restriction, it does not exist, and if it be legal, it must
prevail. The restriction is an incapacity in respect to the
character of the party, is not engrafted on the estate, might
be removed by the legislature, and also by a power of the tes-
tator for that purpose. The testator has given a power for

that purpose. The fifty-fifth section authorizes the trust for the lives of any number of persons.

The interest of the cestuis que trust, or of either of them, is not for the life of any other than a devisee, and is not within section nineteen of the statute. The interests of the cestuis que trust, in the twelve shares are not successive, but concurrent, and the rules respecting successive life estates do not apply. This interest in the survivorships, or cross remainders, is vested, and could be aliened by them, but for the provision of law; for by uniting with the reversioners they could convey the entire interest in possession.

But if it should be determined that the trust created by the testator is a limitation which suspends the power of alienation for more than two lives in being, and that section 55 does not authorize such suspension for more than two lives, yet the trust is not wholly void, but only to the extent in which it is prohibited by the statute. And as the right of each of the twelve to enforce the trust is personal and several, it is a distinct right in each for his own life, the power of aliening which may be lawfully suspended during the life of each, and one other life in being; and the legal estate is valid, so far as it is necessary to support such a trust. In this view of the case, however, the surviving interests of each of the twelve, after the death of two, cannot be supported.

*J. Duer,* for the infant trustees. This court has power, under the revised statutes, so to model the trusts of the will as to carry into effect the intentions of the testator, so far as those intentions are consistent with the rules of law. (1 *Atk.* 293. 3 *Id.* 122. 2 *Lev.* 373.) The trust estate being created for a purpose authorized by section 55, tit. 2, ch. 1, part 2, of the revised statutes, (1 *R. S.* 728,) must be valid, unless it violates the statutory rules, in relation to life estates, or in restraint of perpetuities. The words *subject to the rules prescribed in the first article of this title,* in section 55, are applicable either to the estate of the trustees, or to the interest of the cestuis que trust, considered as a legal estate. Applying them to the estate of the trustees: as, under the revised statutes, trustees can take

no other or greater estate than the purposes of the trust require, the estate of the trustees, under the present will is not a fee, but a freehold during the lives of the twelve nephews and nieces, determinable on the death of the survivor. Jacob Lorillard, one of the trustees, is not a cestui que vie, and as the trustees are joint tenants, their estate is, perhaps, strictly speaking, an estate per autre vie, and therefore subject to the rules prescribed in the article referred to, in relation to such estates. Those rules do not prohibit the creation of such an estate for any number of lives in being. It is true, that under the 19th section, (1 *R. S.* 724,) when a remainder in fee is created on an estate to continue during the lives of more than two persons, on the death of the two first named the life estate will cease, and the remainder take effect; but the remainder there meant, is a remainder vested in its creation, and capable of taking effect at the period indicated, in favor of the persons intended by the testator; the time only of its vesting in possession being anticipated. The ultimate limitation of the fee in the present will is not of this character, as it is not only contingent in its creation, but must continue so during the whole period of the trust. It is therefore not capable of vesting on the death of the two nephews and nieces first named, according to the intentions of and in the persons contemplated by the testator. Such ultimate limitation is either wholly void—and then the will is to be construed in the same manner as if it had not been inserted—or if valid, it can only be so on principles that apply equally to all the trusts of the will. But even if the 19th section be construed as prohibiting the continuance of an estate per autre vie, during the lives of more than two persons, the consequence is, not that the estate of the trustees is absolutely void, but that it must cease on the death of the two nephews and nieces first named. This cessation of the estate of the trustees would not invalidate the trusts, if otherwise valid; but their subsequent execution would devolve on the court of chancery.

The words in the 55th section, *subject to the rules, &c.* in their true construction, refer to the interest of the persons to whose use the rents and profits are to be applied. The words were unnecessary, for the purpose of subjecting the

legal estate of the trustees to the rules in question.  And the application of the rules to the interest of the cestuis que trust, is necessary to prevent the mischief which these rules were intended to prevent, and to carry into effect the intention of the legislature, both in regard to life estates and to future limitations ; and express words were necessary to authorize such application.  There is one mode, and one only, in which the rules can be applied to the interest of the cestuis que trust ; and that is, by considering the trust as an immediate devise of a legal estate.  Under the words of the present will, considered as an immediate devise, the twelve nephews and nieces take as tenants in common, each an equal undivided share, during his or her life, with cross remainders to the survivors and survivor until the termination of all the lives.  This construction ought to be adopted, because the words *share and share alike,* and *equally to be divided,* are, even at common law, the appropriate words for creating a tenancy in common. And since the statute, altering and reversing the rule of the common law, a joint tenancy cannot be created unless it is expressly declared that the persons entitled shall hold as joint tenants, and not as tenants in common.   The supposed rule of the common law, that cross remainders in life estates cannot be implied between more than two, is not applicable to the terms of the present will ; and if it were so, the rule itself is no longer in force.  The subsequent provisions of the will, for the introduction of grand nephews and nieces as trustees, manifest the clear intent of the testator, that the cestuis que trust should enjoy as tenants in common ;  and which intent would otherwise be defeated.   This construction is necessary to prevent what would otherwise ensue on the death of Jacob Lorillard, a merger of the equitable interests in the legal estate, and the consequent extinction of the trusts.   And this construction also will best enable the court to secure to the nephews and nieces, in whole or in part, the benefits intended for them by the testator.

Adopting this construction, each cestui que trust will not only take a life estate in his share, but there will be as many successive life estates in each share as there are nephews and nieces amongst whom the rents and profits are to be divided.

But such a limitation is not void, as tending to a perpetuity; nor does it contravene the rule prescribed in the 17th section, (1 *R. S.* 723,) as to successive estates for life. The observations which have been made as to the 19th section of the statute apply equally to the residue of the 17th section, which avoids all successive life estates subsequent to the two first, in order to vest in immediate possession the remainder in fee. If the 17th section be construed as implying a general prohibition, to create more than two successive life estates, still the intentions of the testator are legal, so far as they authorize the succession of two life estates in each share; and to that extent they should be carried into effect, and the trusts of the will modelled accordingly.

The limitation to the trustees, in the present case, is not void as tending to a perpetuity, in violation of the rule prescribed in the 15th section of the statute. (1 *R. S.* 723.) The terms *limitation* and *condition*, in that section, are to be understood in their broadest sense; the object of the section being to declare a new rule, as extensive in its application as the rule of the common law which it was meant to supersede. But the limitation to the trustees involves in itself no suspense whatever of the power of alienation; that supense, if it exist, being created by the act of the legislature, not the will of the party. The incapacity to assign the beneficial interest in a trust for the receipt of the rents and profits of land, declared in section 63, is strictly personal, and is not engrafted on the estate so as to be a component part of the limitation to the trustees. The true meaning of that section is, that the beneficial interest in question is not per se assignable; not that the power to assign or alien it may not be given by the testator. The restraint is imposed to carry into effect an intent implied by the law, and it would be unreasonable so to extend it as to defeat an opposite intent declared by the party. The power therefore given to the trustees, by the present will, to authorize alienation, is valid; and there will consequently be no suspension whatever of the power of alienation, during any period of the trust. If that power be valid, the twelve nephews and nieces, by uniting, may alien the life interest of each; and by uniting with the heirs at

law, if the reversion has descended, may convey an absolute fee in possession.

But even if this cannot be done, still, for other reasons, there will be no suspense of the power of alienation beyond a single life in being; that of Jacob Lorillard. Upon his death, the trustees, and the persons interested in the trust, will be the same. The characters of trustee and cestui que trust are incompatible, when the interests are co-extensive; and the only effect of a limitation which attempts to unite them, is to pass the legal estate discharged of the trust.

If these views should not be adopted by the chancellor, still the limitation to the trustees is only void, so far as it suspends the power of alienation beyond two lives in being; and to the extent of two such lives, in each share, it ought to be supported and carried into effect.

THE CHANCELLOR. The validity of the trust as to the legacies to the Theological Seminary and to St. Philip's Church, and as to the several annuities, present or future, which the trustees are directed to pay out of the rents and profits of the city property, was not contested on the argument of this appeal. On the contrary, it was distinctly admitted on the part of the appellants, and I understood the counsel for all the other parties to the suit who are interested in the question to concede, that the provisions of the will and codicil were valid, so far as related to the payment of such legacies and annuities out of the income of the real estate of the testator in the city of New-York. It is not necessary, therefore, that I should express any opinion upon that question.

Some doubt may perhaps exist as to the validity of the trust for the accumulation of Jacob Lorillard junior's share of the rents and profits for the first seven years after the death of the testator, and the accumulation of one half of Mrs. Bartow's share, for the same period, as directed in the eighth and ninth sections of the codicil. But the children of Mrs. Bartow, in whose favor the trust of accumulation, as to half of her share, is directed, are not before the court, and their ages are not stated; neither are the necessary facts presented by the pleadings to enable me to decide as to the validity of either of those

1835.

Lorillard
v.
Coster.

trusts of accumulation. The decision of these questions must therefore be suspended; with liberty to any of the parties interested in the decision to file a supplemental bill, if they shall be so advised, for the purpose of presenting the facts, and bringing the necessary parties before the court, with a view to such decision.

All the grand nephews and nieces of the whole blood of the testator now in existence, and who may hereafter be entitled to come in as the new trustees, in the manner directed in the second paragraph of the fourth section of the will, appear to be necessary parties for the final decision of the question as to the validity of the bequest of one sixteenth of the rents and profits to the new trustees, when they shall be called upon to act as such trustees. And all of them also appear to be necessary parties for the final decision of the question as to the validity of the ultimate limitation over of the estate, after the death of the twelve nephews and nieces. It was supposed by the counsel for the complainants, upon the argument, that the appellants were not in a situation to ask for a decision of these questions in the present suit. I am not prepared to say that the vice chancellor, by the decree appealed from, has not inadvertently disposed of at least one of these questions, not only against the heirs at law, but also against the two grand nephews who are parties to this suit; so as to make that decree binding and conclusive against the rights of both, as to the sixteenths of the rents and profits, if the decree is not reversed or modified on this appeal. That decree is certainly conclusive as to any future claim on the part of the heirs, to these sixteenths of the rents and profits, as a part of the property not legally disposed of by the will; as the decree directs the whole of the surplus rents and profits, during the lifetime of the twelve nephews and nieces and the longest liver of them, to be paid to and among such nephews and nieces, and to and among the survivors and survivor of them, share and share alike, according to the directions of the will. I am inclined to think this decree must also be construed as containing a direction to distribute the whole among the nephews and nieces, without reference to the sixteenths appropriated to the new trustees, after the original trustees who were willing

1835.
Lorillard
v.
Coster.

and qualified to act shall be reduced below five ; so as to bar the claim of the two grand nephews of the testator who are parties to the suit, to these sixteenths, in their character of new trustees, when they may be called upon to act as such, as well as to bar their claim to a share thereof as property undisposed of by the will, to which, in that case, they would have a claim as heirs at law of the testator. If it was not intended to decide the questions as to the validity of this part of the trust, and as to whom these sixteenths would legally belong when the time arrived for bringing in the new trustees, the decree should have directed the distribution among the nephews and nieces only to that time ; and all further directions as to the distribution should have been reserved. This part of the decree, however, may still be right, if the general trusts in favor of the twelve nephews and nieces are valid ; provided the limitations over to the new trustees of these sixteenths of the rents and profits are absolutely void.

I also think that this is a case in which the heirs at law of the testator, who insisted upon the invalidity of the whole trust as to the rents and profits and as to the ultimate limitation over to the children and grand-childrden of the twelve nephews and nieces, had a right to ask for a decision of the court as to the validity of these several limitations ; before the trustees could be authorized to execute the power in trust in relation to investing the personal estate, and the proceeds of the testator's real estate out of the city of New-York. That investment can be authorized, by the court, only so far as the trusts upon which the testator has directed the investment to be made are legal and proper. And if the ultimate limitation over to the children and grand-children of the twelve nephews and nieces, or any part of the previous trust, is void, the investment must be made in such a manner as to secure the rights of those who are entitled to the parts of the estate not well devised. So far as is necessary to settle the rights of the appellants as to the legal and correct mode of making this investment, so as to protect the legal and equitable rights of all, the executors and trustees must be considered as the legal representatives of the rights of persons not yet in esse ; who could not, of course, be brought before the court as parties.

1835.

Lorillard
v.
Coster.

And it is not the fault of the appellants that the grand neph-ews and nieces of the testator, who were in existence at the commencement of this suit, are not made parties thereto. If the question as to the want of proper parties had been suggested before the vice chancellor, it would have been the correct course to let the cause stand over, with leave to the complainants to amend their bill, so as to bring all necessary parties before the court. But as neither party raised the objection there, it was competent for the court to go on and make the proper decree, so as to settle the rights of the parties then before it ; which decree, of course, is without prejudice to the rights of those who are not before the court as parties, and who were entitled to be made parties before a decree could be made as against them definitively settling their contingent rights.

The discussion of the questions arising upon this appeal, and the decree which may ultimately be made between the present parties, must, to a certain extent, be a discussion and decision of questions involving the rights of persons in esse who are not now before the court. That consideration, however, is not very material in the case now under consideration ; as most of those persons are infants, who would be dependant on others for the protection of their rights, even if they were nominal parties, and as there is no dispute as to facts. The decision of the court upon questions of law arising between the parties to the suit cannot legally affect the interests of those who are not properly represented here, except so far as the decision of a question of law, by one of the superior courts of judicature, necessarily involves a decision of the rights of persons who are not parties to the suit, but whose rights depend upon the same question.

I agree with the vice chancellor, that it is evident, from the whole of this will taken together, that the testator intended the rents and profits which should arise from the real property directed to be purchased in the city of New-York, should be divided among the twelve children of his brothers of the whole blood ; which children were expressly named, in the first section of the will, as distributees of the surplus rents and profits of the city property of which he died seized. At the

time of the making the will, and at the death of the testator, the twelve nephews and nieces of the whole blood, named in the first section of the will as distributees, were the only children of these three brothers. And there is no fact or circumstance before the court from which I can infer that the testator contemplated any increase of the number of those children. Neither was there any reason, on the general principles upon which he attempted to dispose of the rents and profits of his property during the continuance of the trust, for making a distinction as to the class of persons who were to be the distributees of the income of the city property, over and above the legacies and annuities charged thereon, and the class to whom the income of the property which he directed to be purchased was to be distributed during the same period. It is evident, to my mind, that the testator, throughout this will and codicil, has used the expressions, *my said nephews and nieces*, and *all the children of my brothers Blaze, Peter, and Jacob Lorillard*, indiscriminately, as meaning the same thing; and as intended to designate the twelve nephews and nieces who had been particularly named by him as trustees and executors in the commencement of the will, and as general distributees of the rents and profits of the real estate mentioned in the first section. The latter expression is used, both in the will and in the codicil, in limiting the continuance of the annuities; where it unquestionably means the twelve nephews and nieces, upon the termination of whose lives the ultimate limitation over of the legal estate to others is made to depend. In this case, also, the gift of the rents and profits of the property to be purchased, must be deemed to vest in possession at the death of the testator; and not at the end of the three years, which is fixed as the period within which the power in trust shall be executed. Although, as a general rule, one year is allowed for the purpose of collecting and ascertaining the extent of a personal fund directed to be turned into real estate, this does not alter the general rule as to the construction of a will devising property to a class. The principle of construction adverted to by the vice chancellor, in his opinion in this case, is therefore correct as applied to the second sec-

tion of the will.   And a devise of the rents and profits to all the children of the three brothers, as a class, would not include those who were not in esse at the death of the testator. (*See* 3 *Bro. C. C.* 404, *note a.*)   There is, therefore, no difference in the construction which is to be given to the general devise of the rents and profits of the city property of which the testator died seized, and that in relation to the rents and profits of the real estate which he directs to be purchased ; or as to the ultimate limitation over of the legal estate after the death of the twelve nephews and nieces.   Upon the principles of equitable conversion, money directed by the testator to be employed in the purchase of land, or land directed to be sold and turned into money, is, in this court, for all the purposes of the will, considered as that species of property into which it is directed to be converted ; so far as the purposes for which such conversion is directed to be made are legal, and can be carried into effect.   (*Sweetapple* v. *Bindon*, 2 *Vern.* 546.   *Leadenham's Ex'r* v. *Nicholson*, 1 *Har. & Gill's Rep.* 267.   *Fletcher* v. *Ashburner*, 1 *Bro. Ch. Cas.* 497. *Craig* v. *Leslie et al.*, 3 *Wheat. Rep.* 563.)   The same principle is also applicable to the case of a direction in a will to sell one piece of land and to convert it into another, for the purposes of the will, by investing the proceeds of the sale in the purchase of such other lands, under a valid power in trust to make such sale and reinvestment.   The whole doctrine of equitable conversion depends upon the well established and familiar principle, that a court of equity looks upon that as done, which the parties to an agreement, or marriage settlement, have contracted to do, or which the testator by his will has directed to be done ; so far as the contract of the parties, or the will of the decedent, could have been carried into effect, without violating any equitable principle or rule of law.

The validity of the general trust, in favor of the twelve nephews and nieces of the whole blood of the testator, depends upon the construction to be given to the 15th section of the title of the Revised Statutes relative to the nature and qualities of estates in real property and the alienation thereof, in connection with other provisions of the same title ; particularly those contained in sections thirty-six, fifty-five and sixty-

three. (1 *R. S.* 723, 725, 728, 730.) And it may be proper hereafter to examine the history of this 15th section, with a view to determine the question whether it was intended, as supposed by the vice-chancellor, to apply only to *future estates* in land, as defined by the 10th section; or whether it was intended to prevent real property from being shackled or encumbered, by any means whatever, whereby the power of conveying an absolute fee in possession, in such property, should be suspended for more than two lives in being, except in the special case provided for in the 16th section. I may here remark, that the provisions of the 36th, 55th, and 63d sections, as well as of the 15th as it now stands, are alterations of the common law rules as to estates and interests in real property. And no reasonable doubt can be entertained that all the devises and bequests in this will and codicil, including the ultimate limitations over to the grand nephews and nieces and their children, would have been valid previous to the adoption of the Revised Statutes. (*See Cadell* v. *Palmer and others,* 1 *Clark & Finn. Rep.* 372.) As the law then stood, however, although the ultimate remainder in the property would have been inalienable until the expiration of two years after the death of the twelve nephews and nieces, the intermediate estate would not have been tied up in the mean time. Indeed, I know of no way in which a present vested interest in real property could have been rendered absolutely inalienable previous to the adoption of the Revised Statutes. The only way in which a conveyance of an absolute fee could be prevented, was by the limitation of a future or contingent interest or estate in the property, in favor of a person not in esse, or in favor of one who was not ascertained at the time of the creation of such estate or interest. This of course would not affect, or suspend, the alienation of a present interest given to another person. And the legislature have done very little towards the improvement of the law, in this respect, if they have enabled the owner of a large estate to give a present vested interest therein, which shall be absolutely inalienable during any number of lives in being at the creation of such interest; and have only removed obstructions which might heretofore have prevented the conveyance of future and contingent in-

terests.  I think, however, it will be found, upon a careful examination of the subject, that neither the revisers or the legislature have made such a mistake in the recent revision of the laws.  The object of the third subdivision of the 55th section of the title before referred to, when taken in connection with the 63d section, was to enable the owner of property to create a trust therein for the benefit of an unfortunate or improvident child, or relative ; and thereby to secure a support and maintenance for life, or for any shorter period.  And in the 57th section, the revisers have carefully provided against an abuse of this right, to the injury of the creditors of the cestui que trust ; by subjecting the surplus rents and profits of the trust property, beyond what may be necessary for his education and support, to the claims of such creditors.  But as such an interest is rendered inalienable during the continuance of the trust, if a testator can render it inalienable for more than two lives in being at the time of his death, consistently with the restriction contained in the 15th section, by creating an interest in the rents and profits of the trust estate in the nature of a joint tenancy between three or more persons, he could also render it inalienable for a century, by inserting a great number of lives.  In the present case, instead of inserting the names of only twelve nephews and nieces as trustees and cestuis que trust of the rents and profits of his estate, the testator might have indulged his peculiar fancy much further, by inserting the names of his three nieces of the half blood and his fifteen grand nephews and nieces, who are partially provided for in the will, as joint trustees and distributees with the other twelve.  In this way he would have taken the same chance of suspending the power of alienating or of dividing his large estate, during the lives of thirty persons.  And as all of them had nearly the same claims upon his bounty, and the income was more than sufficient for all, such a disposition of his property would be full as rational as the one he has made by this will.

By the common law, as modified by the statute of uses, a testator, by means of an executory devise of a contingent, shifting, or springing use, or trust, in favor of persons not in esse, or who could not be ascertained until after the happen-

ing of the contingency provided for in the will, might legally suspend the power of alienating an absolute fee simple in possession, in his estate, during the continuance of any number of lives in being at the time of his death, and for twenty-one years, and the usual time of gestation, afterwards. The revisers, in their report to the legislature of the first chapter of the second part of the Revised Statutes, referred to this principle of the common law, and to the abuses which had sometimes occurred by inserting a great number of lives in the limitation of such future and contingent estates, for the purpose of suspending the power of alienation for a very long period of time. They referred particularly to the *Thellusson* will, where the vesting of a contingent estate was suspended during the continuance of thirteen lives, for the purpose of preventing the partage of the testator's large estate during a very long period, and to increase it beyond all reasonable bounds by an accumulation of the income of the property in the mean time; which will was the cause of the passing of the English statute against accumulations. They also alluded to the case of *Bengough's* will, made subsequent to that statute, and mentioned in the opinion of the vice chancellor, where the testator succeeded in suspending the power of alienation for the lives of twenty-eight different persons, and for a gross term of twenty years afterwards. They might also have referred the legislature to the case of *Humberston*, the hospital boy, who, like the testator in the present case, had amassed a large fortune by his own industry and perseverence, but had no children to propagate his name, or enjoy his estate. He, therefore, as he declared in his will, thought it consistent with reason to attempt to perpetuate his remembrance and his name to all posterity, by devising his property to the Draper's Company, and their successors, in trust, to convey the same, for life, to about fifty Humberstons in succession, with contingent life estates to their several sons successively. This attempt, however, failed, in part, in consequence of the introduction of the intermediate estates to persons not in being at the death of the testator. (*See* 2 *Vern. Rep.* 737; 1 *P. Wms.* 332.)

The remedies which the revisers at first proposed, to pre-
vent such abuses in the limitation of contingent estates, were
to limit the accumulation of the income, or rent and profits
of the estate, to the actual minority of the person for whose
benefit such accumulation was to be made, and who must be
in existence at the time the accumulation for his benefit was
directed to commence ; to prevent the power of alienation from
being suspended by the introduction of mere nominees, who
had no interest in the previous estate, beyond the period of
two lives ; to restrain the creation of more than two succes-
sive estates for life ; and finally, to restrict the power of lim-
iting contingent remainders to persons not in esse at the
death of the testator, to a provision for the single case of the
death of the first remainder-man in fee during his minority.
But as a trustee cannot alienate the trust estate in violation
of his trust, and the interests of the cestui que trust in the
rents and profits, or income of property, was rendered inalien-
able by the 63d section of the statute, and as the 60th section
declared that the cestui que trust in such a case should take
no estate or interest in the land, the restriction proposed by the
revisers upon the creation of future contingent estates would
not have prevented abuses in the creation of such trusts, had
not the present 36th section been introduced.    This, with the
17th section, which was afterwards stricken out by the revi-
sers, would I think have been sufficient to answer every pur-
pose contemplated by them ; although the 55th section, in
connection with the 63d and 65th sections, had introduced a
new method by which a present vested estate in possession
could be rendered inalienable during the life of the party for
whose benefit such estate was created.

The vice chancellor was probably led into the error of sup-
posing that the 15th section only related to future estates, as
defined in the 10th section, from the juxtaposition of the 14th
and 15th sections, and from the first clause of the former be-
ing confined in terms to future estates ; and also from the
fact that at the common law there was no way of rendering
property inalienable, except by the limitation of a future es-
tate.    The 15th section, as originally drawn, was only in ac-
cordance with the rule of the common law, as modified by the

rejection of the absolute term of twenty-one years in gross, after the determination of any number of lives in being at the creation of the estate.   This section in its terms, like the analogous principle of the common law, embraced, and was intended to embrace, every possible means by which the estate could be rendered inalienable beyond the prescribed period. And it was the original 17th section only, which prohibited a suspension of the power of alienation, beyond the period of two lives, by the creation of future estates; which estates were declared to be void in their creation.   After this chapter was prepared by the revisers and printed, for some reason which does not appear, but probably to prevent any attempt which might be made, under the provisions of the 55th and 63d sections, or otherwise, to tie up the estate for a longer period than two lives in being, and to make assurance doubly sure, they concluded to alter the 15th section; so as to declare the general rule of law for the future, that the absolute power of alienation should not be suspended in any case whatever, for a longer period than during the continuance of not more than two lives in being, except in the single instance of the death of the ultimate remainder-man during his minority, as provided for in the next section.   This alteration in the 15th section being made, the 17th section which applied only to restrictions upon the power of alienation by means of future estates became unnecessary, and was stricken out; the provisions of the 15th section, as amended, being sufficiently broad and extensive to embrace every kind of estate, either present or future, by which the power of alienation might be suspended beyond the prescribed period.   The corrections to which I allude, will be found upon the. back of the printed analysis to the chapter on real property, as reported to the legislature by the revisers.

But even if the counsel for the respondents are right in supposing that the 15th section only relates to a suspension of the power of alienation by the creation of future estates, I do not see how it can help their clients in this case; for the 36th section declares, that dispositions of the rents and profits of lands, *to accrue and be received* at any time subsequent to the execution of the instrument creating such disposition, shall

1835.

Lorillard
v.
Coster.

be governed by the rules established in this article, in relation to *future estates* in lands. (1 *R. S.* 725.) Every disposition of rents and profits of land, therefore, either through the medium of trustees or otherwise, which has the effect to suspend the power of conveying an absolute fee in possession in the premises for a longer period than is allowed by law, must be considered as a suspension of the power of alienation by means of a future estate, so as to render such disposition invalid ; so far, at least, as it has the effect to render the estate inalienable for a longer period than is allowed by the 15th section. The third subdivision of the 55th section is also in strict accordance with these previous provisions; as the express trust for the receipt and the disposition of rents and profits, which is there authorized, is in terms made subject to all the rules prescribed in the first article of that title of the statutes. It is therefore evident, that the legislature had put it out of the power of the testator to make any disposition of his property, or of the rents and profits arising from such property after his death, either through the medium of trustees, or otherwise, which would have the effect to render the property inalienable during the continuance of the lives of these twelve nephews and nieces.

The present case is a striking illustration of the wisdom of these restrictions upon the power of rendering real property inalienable for a long period of time. For the result of the provisions of this will, if they can be carried into effect agreeably to the intention of the testator, will be, according to the ordinary chances of life, to prevent any partage or division of a property now worth three or four millions, for a period of from fifty to one hundred years ; and in the mean time to give to a few of the nephews and nieces, who may chance to live the longest, an enormous and constantly increasing income ; while the descendants, not in esse at the death of the testator, of such of the nephews and nieces as happen to die first, will be left without a shilling out of the proceeds of this immense estate for their education and support, during the continuance of the trust, although presumptively entitled to a large share of the property after the death of the whole of the twelve nephews and nieces.

*Nothing* can be more repugnant to the principles of a republican government than the perpetuation of large and overgrown estates, long after those, by whose industry and prudence such estates have been acquired, have been laid in their graves. I admit it is the part of wisdom, in a republic, to foster a spirit of enterprise, economy and active industry among all classes of its citizens, by securing to them the undisturbed enjoyment of their honest acquisitions as long as they are capable of such enjoyment, and by permitting them, within reasonable limits, to dispose of the fruits of their exertions as they please at their death. The natural right, however, of disposing of, as well as enjoying all earthly possessions, necessarily terminates with our lives. And whatever power of disposition or control we are permitted, by anticipation, to exercise over our acquisitions after that time, is merely a favor conferred upon us by some positive regulation of society. No one, therefore, should be encouraged, or even allowed, to make an unnatural and capricious disposition of his property by will, without regard to the situation and probable wants of those who are the proper objects of his bounty, for the mere purpose of rendering such property indivisible and inalienable for a long period after his death ; because such a disposition of his property, by will, is a serious injury to the community, which has granted to him the privilege of disposing of the accumulations of his life in this manner.

The fault in this case is not, as the counsel supposed, in the law, which has rendered a trust estate for the receipt of the rents and profits inalienable, although it authorizes the creation of such an estate ; for there is no difficulty whatever in disposing of interests of that kind so as to provide for any number of children and relatives, without violating any of the rules of law relative to the creation of future *estates*, and without rendering property inalienable beyond the prescribed limits. But if a testator, instead of separating a large estate into parcels, and creating a trust in the rents and profits thereof in favor of each object of his bounty, attempts to prevent a division of his property, and to render the whole of it inalienble for a longer period than is permitted by law, by cre-

1835.

Lorillard
v.
Coster.

ating an interest in the rents and profits in the nature of a joint tenancy between a great number of persons, the fault is in the instrument creating such an estate, and not in the law which renders the estate inalienable. In such a case, it is the nature of the estate created, and not a mere personal disabilty of the individuals for whose benefit it is created, which renders it impossible for the trustees, or any other persons in being, to convey an absolute fee in possession in the premises. Where, either by the rules of the common law or the provisions of a statute, an estate or interest of a particular character, must necessarily have the effect to suspend the power of alienation beyond the prescribed limits, it is in vain for any one to attempt to evade the positive prohibition, so often alluded to, contained in the fifteenth section of the revised statutes, by the creation of such an estate, or interest. And if the interest of the nephews and nieces, in the rents and profits of the testator's property, is to be considered as of the nature of a joint tenancy, so as to prevent a partage of the property, and to render the whole inalienable until these twelve persons are all dead, I shall feel myself constrained to declare that the whole trust in their favor is void.

It therefore becomes my duty to examine the question, which was not raised before the vice chancellor, but which was so ably argued by the counsel for the infant trustees on this appeal, whether the interest of the twelve nephews and nieces, in the rents and profits, is to be considered as of the nature of a joint tenancy, or only as a tenancy in common with cross-remainders.

Every estate vested in executors or trustees, as such, is held by them in joint tenancy, as between themselves. But the nature of their estate in the trust property, in reference to the rights of their cestuis que trust and others, depends entirely upon the nature of the rights or interests of the latter. And when all the purposes of the trust as to any share of the trust property are illegal, or cease, the estate of the trustees, in that share of the property, also ceases to exist; and the trustees thereafter become tenants in common with the owner of that share, although, as to the residue of the property, the trustees continue to hold it in joint tenancy between them-

selves. (1 *R. S.* 727, § 44. *Id.* 730, § 67.) I can see no difficulty in applying this principle to the case of a trust which is void only as to an undivided share of the property, which undivided share is of such a nature that it can be holden by the owner thereof as a tenant in common with the trustees, as the owners of the residue of such property in their character of trustees and joint tenants of such residue. The legislature of this state has made it the duty of the court, in the construction of a will, or any other instrument creating, or conveying, or authorizing the creation of any estate or interest in lands, to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument, and is consistent with the rules of law. (1 *R. S.* 748, § 2.) This was the rule of construction as to wills, before the adoption of the revised statutes. And I am not aware that it was ever seriously doubted, that where a part only of the trusts of a will were contrary to the rules of law, the intention of the testator could be carried into effect, so far as it was consistent with legal rules, where it was possible for the court to separate the legal from the illegal part of the trusts. The court of chancery sometimes even ventured to alter or modify the trusts of a will which were illegal, or incapable of being carried into effect, upon the doctrine of *cy pres ;* so as to make them conform as near as possible to the intention of the testator, without violating legal rules. This doctrine, however, never received much encouragement, except in the single case of devises to charitable uses. I cannot, therefore, agree with the counsel who argued this case on the part of the infant trustees, in supposing that the provision of the revised statutes, last referred to, was intended by the legislature to extend the doctrine of *cy pres,* so as to make it the duty of courts of justice to frame or decree the execution of a new intention for the devisor in a will, or the grantor in a deed, as near as possible to the original intent which was illegal or incapable of being carried into effect. The object of the legislature unquestionably was to declare the rule of law as it before existed in relation to the construction of wills and the carrying into effect of the intention of the testator so far as such intention was legal and practicable ; and to apply the

1835.

Lorillard
v.
Coster.

same principles to all other instruments in the nature of con-veyances of real property.

If this testator, by his will, had made separate or distinct devises of the several undivided one-twelfth parts of his prop-erty to the same trustees, for the benefit of his nephews and nieces respectively, giving the rents and property of each un-divided share of the property to such nephews or nieces for life, I think there could have been but very little difficulty in arriving at the conclusion that the interests of the several nephews and nieces, in the rents and profits of their several undivided shares of the property, must be considered as in the nature of several tenancies in common, and not as a joint ten-ancy; although the legal estate in the entire property, and the right to collect and receive the rents and profits, during the joint lives of the whole twelve, would have been in the same persons as trustees, who would therefore have been joint tenants as between themselves. And upon the death of one of the nephews or nieces, the legal estate in the hands of the trustees would cease as to that undivided one-twelfth of the property, and the heirs at law of the testator would be-come tenants in common with the trustees. That share of the estate, therefore, would only be rendered inalienable dur-ing the continuance of one life in being at the death of the testator, to wit, the life of the cestui que trust of the rents and profits thereof. The same principle would apply as to the share of the estate devised for the benefit of each of the oth-er nephews and nieces.

In the form in which this devise of the rents and profits to these twelve nephews and nieces is in fact made, there is no doubt that their interests in the rents and profits must have been considered as in the nature of a joint tenancy, if the com-mon law rule of construction still prevailed. By the common law, a devise or grant to two or more persons created a joint tenancy, except in those cases where it was expressly declar-ed, or appeared by necessary implication, that the estate cre-ated was intended to be a tenancy in common. But this rule of the common law was reversed by the legislature of this state more than fifty years since, except as to the estates of executors and trustees. (1 *Greenl. Laws*, 207, § 6 ; 3 *R. S.*,

1835.

Lorillard
v.
Coster.

*app.* 48.) And since that time every grant or devise of an estate, or interest in lands, to two or more persons in their own right, or to others in trust for them as the persons beneficially interested therein, has been deemed and taken to be a tenancy in common, between the parties thus beneficially interested, except where their estate or interest was expressly declared to be a joint tenancy. (*See* 1 *R. S.* 727, § 44.) The third subdivision of the 55th section of the statute, which authorizes this disposition of the rents and profits of land through the medium of trustees, subjects the disposition to the rules prescribed in the first article of that title; one of which rules is that contained in the 44th section, reversing the common law rule of construction as to joint tenancies.

From the best and most satisfactory view, therefore, which I have been able to take of all the provisions of this will, the conclusion at which I have arrived, is, that the interest of the twelve nephews and nieces is in the nature of a tenancy in common for life, with cross-remainders; and that such cross-remainders, so far as they are inconsistent with the 17th section of the statute, which prohibits the creation of more than two successive estates for life, are void. It is evident, also, that the first cross-remainders which are limited upon the life estate of each nephew or niece in his or her original undivided share as tenant in common of the rents and profits, are contingent interests, in the nature of contingent future estates; and such interests being inalienable, by the provisions contained in the 63d section of the statute, even after such interests shall become vested in possession, the respective original shares, or undivided portions of the real estate out of which those interests arise, are rendered inalienable for one life before the cross-remainders can vest in possession, and also during the continuance of one other life after the first cross-remainders shall have become vested. All the cross-remainders, except those which are limited to take effect upon the termination of the life estate of the nephew or niece who shall happen to die first, must necessarily have the effect of suspending the power of alienation of portions of the estate for a longer period than the lives of two persons in being at the time of the testator's death; and upon which lives such

cross-remainders are, by the will of the testator, made to de-
pend. Each of the twelve nephews and nieces had, upon the
death of the testator, a vested interest in his or her share of
the rents and profits, in the nature of a vested but inalienable
life estate in one-twelfth of the devised property. This inter-
est necessarily suspends the power of alienation as to such
share during his or her own life. It cannot, therefore, by any
limitation of a contingent interest, or future estate, be sus-
pended beyond the life of one other person in being at the
death of the testator. And as each of the twelve, in addi-
tion to the present vested interest in his or her own share for
life, has also a contingent future interest, in the nature of a
contingent remainder, limited upon the original life interests
in the several shares of all the others, that contingent interest
must of course suspend the power of alienation, as to those
shares respectively, during his or her life ; as the one who
happens to die first might, by possibility, have survived the
owner of the original life interest in every share except his or
her own. When, therefore, the owner of any original share
dies subsequently to the death of any one of the other eleven
who now has a contingent remainder limited upon the ori-
ginal life interest in such share, the alienation of that share
will have been suspended for two lives in being at the crea-
tion of the estate. It is evident, then, that if other contin-
gent interests or cross-remainders in such share should be con-
sidered as valid, and be permitted to vest in the survivors, the
power of alienation as to such share would be suspended be-
yond two lives—and that too by means of the limitation of
*future interests,* in the nature of *future estates.* The several
cross-remainders, therefore, in favor of the eleven survivors in
the rents and profits of the original share of the nephew or
niece who shall first die, and which are so limited as to take
effect immediately upon the death of that nephew or niece,
and those only, are valid, under the restrictions contained in
the 15th section of the statute ; and the several cross-remain-
ders which are limited to take effect upon the termination of
the first life estate, in the shares of each of the other eleven
nephews and nieces, are void.

The limitation of the sixteenths to the new trustees, by the terms of the will, are not to take effect in favor of the grand-nephews and nieces until the number of the original trustees is reduced to four. That part of the devise, therefore, is void, as being too remote ; and it does not change or alter the rights of the surviving nephews and nieces, or the heirs at law, as to the distribution of the rents and profits, as limited by the two first sections of the will. The whole limitation over of the ultimate remainder in fee, to the grand-nephews and nieces, or their children, who may be in existence at the time of the death of the last of the twelve nephews and nie-ces, is a contingent remainder ; and, if it could be sustained, it would necessarily suspend the power of alienation beyond the period allowed by law, before the class of persons among whom the trustees were to divide the property could be ascer-tained. That limitation, therefore, is void, as being too re-mote.

The decree of the vice chancellor must be reversed, or mod-ified, so far as it is inconsistent with this opinion ; and a de-cree must be entered, declaring the construction of the will, and the rights of the parties accordingly. It must also be re-ferred to a master, to settle the form of the conveyances to be taken by the trustees upon the investments in city property, with proper limitations, securing to all persons interested in the property their legal and equitable right therein—the costs of all the parties on this appeal to be paid out of the estate.

The following decree was thereupon entered :

" This cause having been heard before the chancellor, upon the appeal from the decree of the vice chancellor of the first circuit, of the seventh of April, 1834, and having been fully argued by the counsel of the several parties, and the chancel-lor having duly considered the same, *It is ordered, adjudged, declared and desreed,* that the legacies to the trustees of the General Theological Seminary of the Protestant Episcopal Church in the United States, and to the trustees or vestry of St. Philip's Church, and the several annuities to Daniel Hols-man, and to his children, to Rosanna Bowers, and to the sev-

eral grand nephews and nieces of the testator, George Loril-lard, who were living at the time of his death, in the will and codicil mentioned, as stated in the pleadings in this cause, are valid ; and are also valid charges upon the rents and profits of the testator's real estate whereof he died seized in the city of New-York, during the lives of his twelve nephews and nieces, who are named as executors and trustees in his said will, and during the life of the survivor of the said twelve nephews and nieces, if the respective annuitants shall so long live ; and the rents and profits of each and every portion or share of the said real estate in the city of New-York is chargeable with a just and rateable proportion of the said legacies and annuities, without reference to the validity of the devise to the execu-tors and trustees.

" And it is *further ordered, adjudged, declared and decreed,* that the limitation, devise, or bequest of one sixteenth of the net income of the estate of the testator, to each of the grand neph-ews and nieces of the testator who shall act as trustees and executors, after the number of the original trustees and exec-utors shall be reduced to less than five persons, is illegal and void in its creation ; and does not change or alter the rights of any of the nephews and nieces, or of the heirs at law of the testator, as to the distribution of the rents, profits, and income of the estate. But the invalidity of the limitations, devises, or bequests of the sixteenths of the rents and profits will not prevent the said nephews and nieces from acting as trustees, according to the provisions of the said will.

" And it is *further ordered, adjudged, declared and decreed,* that the devise or limitation over, of the ultimate remainder in fee, to the grand nephews and nieces of the testator, or their chil-dren, who may be in existence at the time of the death of the last of the twelve nephews and nieces who are named as the executors and trustees in the testator's will, is a limitation of future contingent estates which would suspend the absolute power of alienation of every part of the testator's real estate in the city of New-York, for a longer period than during the continuance of two lives in being at the time of his death, and is therefore absolutely void.

1835.

Coster
v.
Lorillard.

" And it is *further ordered, adjudged, declared and decreed,* that the interests of the twelve nephews and nieces of the testator, named in the residuary clause of the first section or article of his will, in the income or rents and profits of the real estate in the city of New-York, are not in the nature of a joint tenancy, but are in the nature of tenancies in common between the twelve nephews and nieces for life, with cross-remainders to the survivors in the shares of those who shall die before the time appointed for the vesting of the ultimate remainders in fee ; and that the trust created by the said will, as to the share of each of the twelve nephews and nieces, is valid during the continuance of the life of the person first entitled to such share. But the several cross-remainders, so far as they are inconsistent with the provision of the Revised Statutes, which prohibits the creation of more than two successive estates for life, being void, all the contingent remainders in each share, except the first cross-remainders in such share, are therefore void. That the several cross-remainders in favor of the eleven surviving nephews and nieces, in the rents and profits of the original share of the nephew or niece who shall first die, and which are limited to take effect immediately upon the death of such nephew or niece, are valid. But that all the other remainders, which are limited to take effect upon the death of any of the other eleven nephews or nieces, being limited in such a manner as to suspend the power of alienation for a longer period than during the continuance of two lives in being at the death of the testator, are therefore illegal and void.

" And it is *further ordered, adjudged, declared and decreed,* that the trusts created in and by the second section or article of the will of the testator, George Lorillard, in the real estate to be purchased in the city of New-York, and the power in trust to sell the real estate out of the city of New-York, for the purpose of making such investments, are valid, to the same extent as the devise in trust, in the previous part of the will, in relation to the real estate of the testator in the city of New-York. That the twelve nephews and nieces, named by the testator as executors and trustees, are the persons intend-

1835.

Coster
v.
Lorillard.

ed to be designated by the words " all the children of my said brothers Blaze, Peter, and Jacob Lorillard," in the second section or article of the will ; and that the testator did not intend to include any after-born children of his two surviving brothers, in the devise of the income or rents and profits of that part of his property.

" And it is *further ordered, adjudged and decreed,* that it be referred to one of the masters of this court, residing in the city of New-York, to settle and report to this court the form of the conveyances which shall be taken by the executors and trustees, upon the investments of the proceeds of the testator's real estate out of the city of New-York, and of his personal estate, in the purchase of real estate in that city ; with proper limitations in such conveyances, securing to the several devisees and to the heirs at law of the testator, their several rights therein upon the footing of this decree. That the costs of all the parties in the original suit, as well as upon this appeal, be paid by the executors and trustees out of the income, rents, and profits of the real and personal estate of which the testator died seized. And that all questions and directions, not herein decided or given, be reserved until the coming in of the said master's report ; with liberty to any party to apply to the court from time to time, upon the foot of this decree, on due notice to all the other parties in interest, for such further directions as may be necessary ; and so much of the decree of the vice chancellor of the first circuit as is inconsistent with this decree is reversed."