The first objection raised by the executors to a reversal of the decree of the supreme court dismissing the bill, is, that the complainants had no right to call on the court of chancery for a construction of the will. The executors claiming an interest in the real estate under the trusts, purporting to be created by the testator, might clearly have filed a bill for that purpose; but it is said that the right is not reciprocal, and that this court should affirm the decree of the supreme court without passing on the questions decided there, in relation to the construction of *Page 415 
the will, and on the ground that that court had no jurisdiction.
The case does not shew that the question of jurisdiction was raised in the supreme court, either at the special or general term. At the special term, the decree in regard to the construction of the will, was in part favorable to the complainants, and in part to the defendants. The defendants brought only a portion of it before the general term for review; availing themselves in part of the construction which was given to the will at the special term. At the general term, the defendants took a decree, not merely for a dismissal of the bill; but a decree declaring the construction of the will favorable to themselves. The defendants therefore did not raise the point, or did not adhere to it, that the bill ought not to be entertained; and they ought not, therefore, now to insist upon it.
Upon the construction of the will, the principal question is, whether the testator attempted to give to his executors a trust term in his eight houses and lots in Chapel and White streets, to continue until the expiration of one year after the death or re-marriage of his widow; and if so, whether he created a valid trust.
By the second clause in his will, the testator charges these eight houses with an annuity of $1,500, to be paid to his wife during her lifetime, or so long as she continues his widow.
By the third clause, he devises two of those houses to John and William, his grandsons, with certain limitations over, and two more to his grandsons, Gideon and Joseph, with similar limitations.
By the fourth clause, he devises the remaining four to his children, George, Mary, Sarah, and Charles, that is to say, one lot to each. Thus far the testator uses apt words, to devise the legal estate, entirely free from any trust; and if this part of the will is to be interpreted by itself, no doubt can exist in regard to its effect. *Page 416 
But the testator proceeds in the fourth clause to say, "But "it is my will that neither of the above mentioned eight "houses and lots shall pass to the possession or use of the "aforesaid devisees, or either of them, until the expiration "of one year from the death or marriage of my said wife."
By the seventh clause, after having empowered his executors to exchange with adjoining owners, such gores and strips of land, as they might deem advantageous for straightening boundary lines, he proceeds, "And I also authorise "my executors to rent and lease houses and lands, and to "collect the rents; to cause all needful repairs to be done; "to pay all taxes and assessments; to effect insurances on "the buildings from time to time, and to cause all surplus "moneys, if any, over and above the uses above specified, to "be from time to time divided and paid over to my four "children, George, Mary, Sarah, and Charles, in equal parts, "until a final division and settlement of my estate."
These passages, although standing apart in the will, have evident connexion with each other. The possession was taken from the devisees for the purpose of being given to the executors; and this purpose is abundantly manifested by the power of actual disposition and management which he confers upon them by the seventh clause above quoted. The power of leasing and collecting rents, necessarily includes the power of putting in and putting out the tenants; and the right of possession is also necessary for the purpose of making repairs. Taking the two clauses together, they are sufficient to vest the trust estate in the executors by implication, provided the trust is legal with respect to its duration. (Leggett v. Perkins, 2 Comst. 305;Oates v. Cook, 3 Burrow, 1685; Doe v. Humphrey, 6 Ad. El. 206; Bradley v. Amidon, 10 Paige, 235; Fletcher onTrustees, 1 to 9; Brewster v. Striker, 2 Comst. 31.)
A trust to receive rents and profits of real estate, and to pay them over to the beneficiaries, is valid, within the provisions *Page 417 
of the statute of trust. (Sec. 55, subd. 3, 1 R.S. 728;Leggett v. Perkins, 2 Comst. 297, 306.) Such a trust is inalienable. The 63rd section of the same statute renders the beneficiary incapable of assigning or disposing of his interest in the trust; and the 65th section makes void every sale or conveyance by the trustee, in contravention of the trust. (1R.S. 730.) The 15th section of the act concerning the acquisition, the enjoyment, and the transmission of property, (1R.S. 723,) forbids the suspension of the absolute power of alienation of real estate, by any limitation or condition whatever, for a longer period, than during the continuance of not more than two lives in being, at the creation of the estate. The power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed. (Sec. 14, 1 R.S. 723.) Trust estates are within the operation of these sections, (5 Paige, 218, Coster v. Lorillard, and
14 Wend. 305, S.C.,) and the consequence is, that if by the continuance of the trust the power of alienation is, or may be illegally suspended, the trust is void, and everything dependent upon it is void.
In Hone's Executors v. Van Schaick, (20 Wend. 564,) in the court for the correction of errors, it was declared, that "every estate is void "in its creation which is so limited that the absolute "power of alienation may be suspended for more than "two lives in being, at the creation of the estate. The lives "must be designated, and life must in some form enter into "the limitation. No absolute term, however short, can be maintained." A single year may be longer than any life which could have been named by the testator, and the creation of a trust term for that period is therefore forbidden.
The trust in the present case was to continue until the expiration of one year from the death or marriage of the testator's wife, and must therefore be declared void.
It was suggested on the argument, that the parties interested could, at any time, have put an end to the trust, by a *Page 418 
division and settlement of the estate; but I think this is not so. The trust was to continue as long as the devisees were to remain out of the possession, by the direction contained in the fourth clause, that is to say, until the expiration of a year after the death or marriage of the widow; and the division and settlement spoken of in the seventh clause, was not to take place until then. An earlier release or conveyance by the executors, would have been in contravention of the trust.
We are then to inquire what becomes of the interest in the eight houses and lots, which the testator attempted, ineffectually, to devise in trust?
Did it pass to his four children, George, Mary, Sarah, and Charles, under the residuary clause in the will? Or did it become vested in the children and grandchildren, to whom the houses were respectively devised, as if no trust clause had been contained in the will? Or did it descend to the testator's heirs at law?
If we were at liberty in construing this will to strike out the clauses which purport to create the trust, and to interpret the instrument as if those clauses had never been contained in it, the interest in the eight lots, during the time for which the trust was to continue, would pass by the will to the children and grandchildren, to whom the lots were respectively devised. The language of those devises, when freed from the modification introduced by the trust clauses, is sufficient for that purpose. The residuary devisee would not take it, because when the trust clauses were stricken out, it would appear to have been previously disposed of to the children and grandchildren.
But we are not at liberty to interpret the will without reference to the inoperative devise. Although that part of the instrument is void, and of no effect in creating the trust estate, it is by a settled rule of construction, to be retained for the purpose of expounding the other provisions of the will. (Van Kleeck v. The Dutch Church, 20 Wend. 472.) It is *Page 419 
this rule of construction which excludes, in most instances, the land described in a void devise from the operation of the residuary clause in a will. The judgment of the court of last resort in the case cited, was founded on this rule of construction. The void devise to the Dutch church, was held to indicate the testator's intention to take the thing intended to be devised out of the operation of the residuary clause, because it was apparent that the testator meant that the church should have it, and therefore that the residuary devisee should not; and the heir was held to be entitled to it, because the church was incapable of taking it under the devise, and the testator never meant to give it by his will to any body else.
Being thus bound to look at the clauses purporting to create the trust, for the purpose of ascertaining the meaning of the residuary clause; we must also look at and consider them, with respect to the devises to the grandchildren, and children, contained in the third and fourth items of the will. And so regarding them, we find that the attempt to create the trust estate has the effect of modifying the devises contained in those items. If the trust had been valid it would have carved the trust estate out of the gift to the grandchildren, contained in the third item of the will; and they would have taken no beneficial interest in the houses therein devised to them, until the termination of the trust estate. The testator thus manifested his intention to modify those devises; and although the trust estate failed, the testator's intention to limit and modify the devises, is as plainly manifested as if the trust had been valid. He meant that the clear surplus income of the eight lots should be enjoyed by his children, George, Mary, Sarah, and Charles, and that his grandchildren, John, William, Gideon, and Joseph, should not have the possession, or come into the enjoyment of the lots devised to them, or the income thereof, until the expiration of a year after the death of the widow. We cannot therefore say that the grandchildren, in consequence of the *Page 420 
failure of the trust estate, are entitled to the immediate possession of the four houses mentioned in the third clause in the will.
If the trust estate had been intended for the benefit of a stranger, or any persons other than the residuary devisees, I should have no doubt that upon its failure, the interest embraced within it would have descended to the heirs at law. It would then have been a case like that of Van Kleeck and the Dutch church. There would have been a plain intention that the residuary devisee should not have the benefit of the property, because the testator had intended to give it to some one else. It is true that this construction of the residuary clause is not strictly logical. Gideon Tucker the testator, by the eighth clause in his will, devises to his four children, George, Mary, Sarah, and Charles, "all his estate, real and "personal, of which he might die possessed, and not therein "otherwise disposed of." The trust estate was void, and therefore "not otherwise disposed of." The words of the residuary clause were according to their common and usual acceptation, sufficient to embrace everything which the testator had not effectually devised. But the courts have in these cases departed from a strict and logical construction of the language of the residuary clause, for the purpose of preventing an estate from passing by that clause to a person to whom the testator did not intend to give the benefit of it. When the testator in the residuary clause devises all his estate "not otherwise disposed of," the courts have read it, as if it had been written "not otherwise specified." They have refused to award to the residuary devisee, what the testator had not otherwise disposed of, although the language of the residuary devise strictly embraced it, because they saw that the testator had intended to dispose of it.
I do not mean to say that the liberty which has thus been taken is unjustifiable; on the contrary, where it is necessary to avoid doing violence to the testator's intentions, it is right. But it is apparent to my mind that it would be wrong to *Page 421 
apply that rule of construction to the residuary clause in the will of Gideon Tucker. The residuary devisees in this case were also the beneficiaries in the failing trust. The testator intended to give them the benefit of the eight houses; the beneficiaries in the trust which he attempted to create, were themselves the residuary devisees. If we look at the clause purporting to create the trust, we see that the testator intended to give the land, or which is substantially the same thing, the income of the land, to his four children, George, Mary, Sarah, and Charles, as long as the trust was to last. But the trust is void, and they take nothing by this attempted gift. The residuary clause gives to these same children all the estate not otherwise disposed by the will. This right to the land until a year after the death of the wife, was not, in fact, disposed of. They are therefore entitled, by force of the residuary clause, and according to the natural import of its words to this undevised right. We are not compelled to alter the meaning of the language to accommodate it to the testator's intention, as discovered in the other clauses in the will. Its natural import corresponds with that intention; we cannot change its natural and logical import without taking the land from those for whom the testator intended it, and giving it, or part of it, to those for whom he did not intend it. I am therefore of opinion, that the interest intended to be embraced within the trust, passed as a legal estate, to the residuary devisees as such, and did not descend to the heirs at law.
With respect to the effect of the codicil, I concur with the supreme court at the general term, that the trust created in the codicil for the testator's son Charles, is void, for the reasons stated in the decree, so far as it affects the ultimate contingent interest devised to Charles by the second and third clauses of the will; and that it is valid with respect to the other property given him by the testator; the revocation is invalid so far as it purports to affect the ultimate contingent interest just mentioned, but valid to the extent to which the *Page 422 
trust created by the codicil takes effect; that is to say, as to all the estate which Charles takes by virtue of the eighth or residuary clause.
The authority given to the executors by the first sentence of the seventh clause of the will, to exchange, sell, and convey gores and strips of land, for the purpose of straightening and equalizing boundary lines, is a mere power, and not a trust.
The will and codcil are valid in all other respects than those herein above stated.
I agree therefore with my brethren, that the decree of the supreme court dismissing the bill was right, although my reasons for that conclusion differ from those which they, or some of them, have expressed.
Judgment affirmed.