Rollins, S.
By the instrument which I lately admitted to probate as this testator’s will his entire estate, real and personal, is given to his executors in trust to receive the rents, issues, profits, interest and income, arising therefrom, and to apply the same to the use of his widow during her natural life. The will then proceeds as follows: “Upon *320 her ” (the widow’s) “ decease I give, devise and bequeath my said estate, real and personal, to my issue. In the event, however, that no issue of mine shall survive my said wife ” (and this event is now inevitable, as the testator left no issue), “then, on her decease I give, devise and bequeath my said estate, real and personal, to the male issue of my cousin J. Hooker Hamersley, then living, and to the male issue of such of them as shall have previously died leaving issue. * * * In the event, however, that my said cousin shaE die without leaving male issue him surviving or surviving my wife, then, on the decease of my wife, I give, devise and bequeath the whole of my said estate, real and personal, to such charitable and benevolent corporations located in the state of New York, and incorporated by virtue of the laws thereof, and in such shares and proportion? as my wife shaU by her last win and testament, or instrument in writing, for that purpose made and executed and acknowledged by her, direct, designate and appoint;, and for that purpose I hereby fully authorize and empower her to make such last wiE and testament or instrument in in writing, direction, designation and appointment aforesaid..
The testator’s cousin, J. Hooker Hamersley, survived, him and is stiE Hving.
Certain of the persons who objected to the probate of the wiE now ask the surrogate to pass upon the validity of the power of appointment which the testator by the provision just quoted has undertaken to confer upon Mrs. Hamersly. It is objected by counsel for the executors that, there is as yet no necessity, no practical advantage, and, indeed, no propriety in passing upon this question; that as under the wiE Mrs. Hamersley is to have the entire income for Efe, and as there may be male descendants of J. Hooker Hamersley living at her death, the question whether the power of appointment is good or bad is of no immediate importance, and may never become important, and that no supposed doubts upon that subject can possibly affect the present rights of any persons interested in the estate or the present duties of any persons concerned in its administration.
It is agreed on aE hands that the authority of the surrogate in the premises springs solely from section 2624, of the Code of Civil Procedure. That section is in words following:
“If a party expressly puts in issue before the surrogate the vahchty, construction or effect of any disposition of personal property contained in the wiE of a resident of the state, executed within the state, the surrogate must determine the question upon rendering a decree, unless the de- . cree refuses to admit the wiE to probate.”
*321 The contestants insist that this provision is precise and definite in its terms and must be obeyed with literalness; and that the mere fact that one has been a party to a controversy over the probate of a will entitles him to insist that before the entry of a decree according probate, the surrogate shall pass upon all questions such party may see fit to raise respecting the validity, construction or effect of such will or any of its provisions.
If this be in truth the clear, unequivocal intendment of section 2624 its directions must be "followed, however unnecessary, inconvenient or absurd they may in the present situation appear to be. . I do not, however, sustain the learned counsel for the contestants in their insistence that the section in question is so clearly worded and its meaning so obvious as not to call for judicial construction; on the-contrary, it seems to me to be sadly in need of such construction.
I find no difficulty whatever with the word “must,” upon which special stress was laid at the argument. No doubt that word has the mandatory signification which contestants’ counsel claim for it. “The surrogate must determine.” But at whose instance must he, and under what circumstances and conditions and pursuant to what-practice and procedure ? It is in these respects that section 2624 has a vague and doubtful meaning. I take it that when a statute empowers a court to do a judicial act in a certain prescribed case, it is in general imperative on such court to exercise its authority whenever that case arises, provided that such exercise is duly applied for by a party who has a right to make the application. But it lies upon one who-contends that the situation has come to pass in which the authority must be exercised to show that such is the fact, that he is entitled to invoke that authority and has adopted the proper procedure for its invocation. Now, while there is no embarrassment as regards this word “must,” there are other words and expressions in section 2624 whose force and effect is far from obvious. The surrogate is to act, says the statute, when a party “ expressly puts in issue ” the validity, construction or effect of any disposition of personal property contained in the will. The phrase italicised is one whose exact significance I confess my inability to understand. “Issue” is a word of very definite and precise meaning. Even apart from technical definition it involves the notion of something in dispute between contending parties—something which is affirmed on the one-side and denied on the other. It is only by a careless use of words that a mere request by a party to a probate controversy that the surrogate shall determine the validity, *322 construction or effect of a will or some portion of a will ■can be called a “putting in issue” by such party of such validity, construction or effect.
Again, if the presentation of such a request is to be •deemed a putting in issue, and if the word “party,” as used in section 2624, means any person who had been a party to the proceeding for probate, this absurdity is the result: ■One who has no interest whatever under a will, except, for •example, as the legatee of a trifling pecuniary bequest given by one of its clauses, may require the surrogate to pass upon the vahdity, construction or effect of a complicated trust created by another clause. . Nay, more : An unsuccessful contestant of a will, though he is not included in the number of its beneficiaries, may require a determination of the construction and effect of any or ah of its provisions, not only without the consent, but even against the protest of every person absolutely or contingently interested theirein.
Surely an interpretation of-section 2624 which would work these consequences, should be avoided unless it is ■unavoidable, and in its stead should be adopted some other more agreeable to convenience, reason-and justice. Maxwell on Interpretation of Statutes (2d ed.,), 230.
The provision of the Code which is now under discussion was enacted in place of an earher provision (section 11, chap. 359 of the Laws of 1870). It is as follows :
“In any proceeding before the said surrogate (that is, before the surrogate of the county of New York) to prove the last will and testament of any deceased person, as a will of real or personal estate, in case the vahdity of any of the dispositions contained in such will is contested, or their construction or legal effect are called in question by any of the heirs or next of kin of the deceased, or any legatee or devisee named in the will, the surrogate shall have the same power and jurisdiction as is now vested in and exercised by the supreme court, to pass upon and determine the true ■construction, vahdity and legal effect thereof.”
As statutes go, the one just quoted was reasonably perspicuous. Now, Mr. Commissioner Throop, in the note which he has appended to section 2624, in his edition of the ■Code, says : “This section has been taken from Laws 1870 (chap. 359, § 11), which confers such a power upon the surrogate of the city and county of New York. It has been so formed as to confine its application to a strictly domestic will, * * * and to a will of personal property. * * * As thus amended the provision has been extended to all ■surrogates’ courts. ”
So far as this note throws any fight upon the intention of the codifiers, it pretty plainly indicates that it was not their *323 purpose to alter or vary the meaning of the act of 1870 in .any other particulars than such as Mr. Throop has specified. The inferences that may fairly be drawn from this comparison of the earlier and later enactments are very clearly set forth by Maxwell in his treatise on Interpretation of Statutes (2d ed.), p. 95. He says:
“Before adopting any proposed construction of a passage susceptible of more than one meaning, it is important to consider the effects or consequences which would result from it, for they often point out the genuine meaning of the words. There are certain objects which the legislature is presumed not to intend, and a construction which would lead to any of them is therefore to be avoided. It is sometimes found necessary to depart, not only from the primary and literal meaning of the words, but also from the rules of grammatical construction, when it is improbable that they express the real intention of the legislature, it being more reasonable to hold that the legislature expressed its intention in a slovenly manner than that it intended something which it is presumed not to intend. One of these pre- ■ sumptions is that the legislature does not intend to make any alteration in the law beyond what it explicity declares, either by express terms or by unmistakable implication— or, in other words, beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed, It is in the last degree improbable that-the legislature would overthrow fundamental principles, infringe rights or depart from the general system of law without expressing its intention with irresistible clearness, and to give any such effect to general words, simply because in their widest and perhaps natural sense they have that meaning, would be to give them a meaning in which they were not really used. It is, therefore, an established rule of construction that general words and phrases, however wide and comprehensive in their literal sense, must be construed as strictly limited to the Immediate object of the act, and as not altering the general principles of the law.”
The learned commentator has grouped (pp. 96 to 114), a multitude of cases in which this doctrine has been asseverated and applied.
Bearing in mind these principles of interpretation, the act of 1870, and the substitution in its place of section 2624 of the Code, can it justly be said that such substitution was intended to work or has in fact worked any change in the policy of the law as regards the persons who may invoke and the occasions for invoking the surrogate’s jurisdiction to construe wills and pass upon their effect and validity at the time of admitting them to probate ?
*324 I feel warranted by the authority of the cases collected, by Sir Peter Maxwell in holding :
First. That no person can command the exercise of such jurisdiction, unless under the will whose provisions he seeks to have interpreted, he claims some interest hi the personal estate bequeathed, or unless, on the other hand, he claims-that because of the invalidity of the testator’s disposition of such personalty or of some portion thereof, he is entitled to share in the same under the statute of distribution; and Second. That an occasion does not arise for the exercise by the surrogate of the power conferred by section 2624 unless, in accordance with the course and practice of the supreme court, that tribunal would, under similar circumstances, exercise, its jurisdiction.
Two questions remain to be considered:
Are these contestants, if the question of the validity of' the power of appointment may now be raised, competent to raise it ?
Would the supreme court determine it in the present, posture of affairs against the objection of'persons interested %: The testator left him surviving no ancestor, descendant, brother, sister, nephew or niece. He left as his next of kin two uncles, an aunt, and several cousins. But his wife survived him; and, had he died intestate, would1 have been entitled to his entire personal estate. Subd. 3, § 75, title 3, chap. 6, part 2, Revised Statutes; 3 Banks (7th ed.), 2303.
I am at loss .to understand, therefore, how the contestants have any interest in the determination of the validity of the power of appointment which they here seek to bring in question. If it is valid, and if it shall be exercised, that is the end of the matter : if it is invalid, or if being valid, it shall not be exercised, men the decedent (in case his gift to his cousin’s prospective male descendant shall also prove abortive) will be discovered to have made no effectual disposition of the corpus of his estate; and so far as regards-the personalty, with which alone this court can ever be concerned under section 2624, that estate will be found to have vested at his death in his widow, subject to a possible divestment that never in fact occurred.
Assuming, however, that this view is incorrect, and that the contestants have a contingent interest in the personal estate of the testator, I feel bound to deny their present application, as one which would not now be entertained and passed upon by the supreme court for the reasons urged by counsel for the executors. Wead v. Cantwell, 36 Hun, 528; Ward v. Ward, 16 Abb. (N. C.), 25,3. This conclusion is not at odds-with Lorillard v. Cosier (5 Paige, 172), or with Hawley v. James (Id., 442). See the criticism upon these cases in Cross v. DeValle (1 Wall, 5). It is in harmony with the' *325 latter case, and with Davis v. Angel (8 Jur. [N. S.], 709), S. C. (Id. 1024), Minot v. Taylor (129 Mass., 160), Goddard v. Brown (12 R. I.,. 31), Hampton v. Holman (L. R. Ch. Div., 183), Jackson v. Turnley (21 Eng. L. and Eq. 13), Thelluson v. Woodford (4 Ves. 227, 309, 310, 328), Lady Langdale v. Briggs (39 Eng. L. and E., 194, 214-218), Bailey v. Briggs (56 N. Y., 407).
Application denied.